PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No  10-3388
_____


COURTLAND C. PITTS,
Appellant

v.

STATE OF DELAWARE; RUTH ANN MINNER;
RENEE HRIVNAK; STATE OF DELAWARE POLICE;
LT. COL. AARON CHAFFINCH; LT. MARK DANIELS;
GREGORY SPENCE; M. JANE BRADY
_____


On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-05-cv-00185)
District Judge:  Honorable Joseph J. Farnan, Jr.
_____


Argued April 25, 2011


Before: SLOVITER, GREENAWAY, JR., Circuit Judges
and POLLAK,[*] District Judge


(Filed    June 17, 2011  )
_____


_____

[*] Hon. Louis H. Pollak, Senior Judge, United States
District Court for the Eastern District of Pennsylvania,
sitting by designation.

Karen E. Keller  (Argued)
John W. Shaw
Young, Conaway, Stargatt & Taylor
Wilmington, DE  19899

         Attorneys for Appellant

Ralph K. Durstein, III   (Argued)
Department of Justice
Wilmington, DE  19801

         Attorney for Appellees

_____

OPINION OF THE COURT
_____

SLOVITER, *Circuit Judge*.

It is only on rare instances that a jury's verdict in a civil case should be overturned.  This appeal presents the question whether this is such a case.

Courtland Pitts filed a Complaint against Corporal Gregory Spence of the Delaware State Police, asserting claims under 42 U.S.C. § 1983 and state law.  After a trial, a jury found in favor of Pitts on two of his four claims.  The District Court granted Spence's subsequent motion for judgment as matter of law, made pursuant to Rule 50 of the Federal Rules of Civil Procedure.  Viewing the evidence in the light most favorable to Pitts, we conclude that the District Court erred.

**I.**

Pitts' Complaint against Spence alleged that Spence falsely arrested, illegally seized, and maliciously prosecuted him, as well as deprived him of equal protection under the law.  At trial, Pitts testified that his claims arose out of events occurring when Pitts, who is African American, went to

Mitchem's Auto Body Shop and conversed with its owner, James Mitchem, Jr., who is Caucasian, about Pitts' displeasure with work Mitchem had done on Pitts' car. A verbal dispute between the men arose, which quickly escalated into a physical altercation. At some point, Mitchem "promised" to "[o]pen up a can of whoop ass" on Pitts, which Mitchem conceded was intended to convey a physical threat. App. at 328-29. The men brawled and Pitts knocked Mitchem to the ground by punching him after Mitchem lost his balance.

After Mitchem fell, Daniel Wykpisz, a shop employee who had witnessed the altercation and who is Caucasian, grabbed an aluminum baseball bat from the shop and chased Pitts from the area. During the chase, Pitts came across a board, which he picked up to defend himself. Wykpisz then stopped giving chase, turned around, and walked back to the shop.

Pitts testified that he walked back to his car, which he had parked in the common parking lot shared by the numerous industrial shops in the area, and discovered that his car windshield and hood had sustained fresh damage. Mitchem later admitted responsibility for causing the damage. While Pitts was near his car, Mitchem threatened him by saying "[y]ou better get the F out of here or I'll get my gun." App. at 252. Pitts dialed 9-1-1 several times, conveying to the dispatcher that he had been chased with a baseball bat and that Mitchem had threatened him with a gun. Wykpisz and Mitchem testified they had also called 9-1-1. At least two officers responded to the calls, including Spence, who is Caucasian, and another officer, Corporal Helen Dane.

Although the exact sequence of events is unclear, Pitts testified that when Pitts saw Spence's patrol car, he started waving his arms to identify himself as the person who called for assistance. Spence, who had received a report that there might be a gun at the scene, acknowledged Pitts by rolling down his window slightly and yelling, "[g]et back, get back." App. at 255. Pitts accused Spence of treating him unfairly, exclaiming "[i]f I was a white guy, you would have been out

3

of that car, and I would have been treated differently." *Id.* According to Pitts, Spence then jumped out of his patrol car, got in Pitts' face, and when Pitts asked for Spence's badge number and supervisor's name, told Pitts to "[s]hut the fuck up." App. at 256.

Pitts and Spence hollered at each other and Spence eventually told Pitts that "[i]f you don't shut the fuck up, I'm going to arrest you." App. at 257. Pitts put his hands behind his back and told Spence that he was not going to resist. Spence handcuffed Pitts and placed him in the backseat of the patrol car, but did not read Pitts his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).

Pitts testified that he was unable to tell Spence about Mitchem's threats or that Wykpisz chased him with a bat because Spence "never gave [Pitts] a chance" and "didn't want to hear anything [Pitts] had to say." App. at 276. Pitts declined to give a statement but Spence continued his investigation by speaking with Mitchem and Wykpisz, who gave a narrative of the events and informed Spence that Pitts had made the gun threat. Pitts did not see Spence question any of the numerous witnesses who had gathered at the scene.

After speaking with Mitchem and Wykpisz, Spence drove Pitts to the police station where Pitts' *Miranda* rights were read to him and he was informed of the charges against him. Spence charged Pitts with aggravated menacing, two counts of terroristic threatening, assault in the third degree, disorderly conduct, and criminal trespass. Spence charged Mitchem with disorderly conduct, offensive touching, and criminal mischief. Dane also arrested Mitchem and brought him to the station.

Spence towed and conducted an inventory search of Pitts' car. The inventory search produced nothing incriminating. Spence did not report finding a weapon.

The parties' briefs do not discuss the state court trial based on the charges against Pitts on one hand and Mitchem on the other. Pitts was acquitted of all the charges brought

4

against him.  Pitts asserts that Mitchem pled no contest to two of the charges against him, and that the third was dropped pursuant to a plea agreement.

Following the state court proceedings, the District Court proceeded to hear the instant suit, which Pitts had filed against Spence.  The jury returned a verdict, pursuant to a general verdict form, finding in favor of Pitts on his illegal seizure and equal protection claims, and in favor of Spence on Pitts' false arrest and malicious prosecution claims.  The jury awarded Pitts $80,000 in compensatory damages and $1,000 in punitive damages.  Spence filed a motion for judgment as matter of law, which the District Court granted.

In granting the motion, the District Court noted that the parties' agreed-upon instructions presented the jury with two possible scenarios that could support Pitts' claim of illegal seizure: (1) when Spence handcuffed and placed Pitts in the back of the patrol car; and (2) when Spence towed and conducted an inventory search of Pitts' car.[1]  The District Court first considered whether there was sufficient evidence to support the jury's illegal seizure verdict insofar as it was based on Pitts' detention.  Citing investigatory detention jurisprudence under *Terry v. Ohio*, 392 U.S. 1 (1968), the Court concluded that "based on the facts available to Corporal Spence at the time he handcuffed Mr. Pitts, the detention of

---

[1]   The District Court held that the jury's verdict in favor of Spence on Pitts' false arrest claim was facially inconsistent with its verdict in favor of Pitts on his illegal seizure claim insofar as the latter was based on Pitts' arrest, but that the verdicts may be reconcilable if Pitts' detention were viewed as separate and distinct from his arrest.  The Court, however, declined to address whether the verdicts could be so harmonized because, as it stated, "regardless of whether the verdict is inconsistent or reconcilable, the Court concludes that Corporal Spence is entitled to judgment as a matter of law because there is insufficient evidence to support the jury verdict that Mr. Pitts was subject to an illegal seizure based upon his handcuffing and placement in the patrol vehicle." *Pitts v. Spence*, 722 F. Supp. 2d 476, 481 (D. Del. 2010).

Mr. Pitts was reasonable in that Corporal Spence had an articulable suspicion that Mr. Pitts had been involved in a fight at Mitchem's Auto Body Shop, and that Corporal Spence's personal safety or the safety of others at the scene could be in danger." *Pitts v. Spence*, 722 F. Supp. 2d 476, 483 (D. Del. 2010). The Court therefore held that Spence's detention of Pitts was reasonable as a matter of law and that there was insufficient evidence to support the jury's verdict to the extent it was based on this conduct.

The Court next considered whether there was sufficient evidence to support the jury's illegal seizure verdict insofar as it was based on the search and seizure of Pitts' car. The Court concluded that Spence's testimony at trial established "that the towing of [Pitts'] vehicle was required both to prevent harm to the vehicle and to prevent the possibility of another altercation." *Id.* at 484. Based on this testimony, and Spence's assertion that he conducted the search in accordance with standard procedure, the Court held that the search and seizure was reasonable as a matter of law and that there was insufficient evidence to support the jury's verdict in Pitts' favor. The Court rejected Pitts' argument that the evidence suggested that the search of the car was pretextual. It also rejected Pitts' contention that Spence's admission that he lacked probable cause to search Pitts' car rendered the inventory search unreasonable. In finding this argument unpersuasive, the Court cited inventory search jurisprudence and reasoned that "the concept of probable cause is not implicated in an inventory search." *Id.*

Turning to the jury's verdict in favor of Pitts on his equal protection claim, the Court was not persuaded that Spence's failure to properly document or investigate the incident could support the jury's verdict, reasoning that "any gaps in the police report concerning Mr. Pitts' point of view are attributable to [Pitts'] own lack of cooperation" in declining to give a statement to Spence after Spence attempted to interview him. *Id.* at 487. The Court rejected Pitts' other arguments, concluding that there was "no evidence" that Spence acted with discriminatory purpose or that his actions were in any way motivated by racial animus.

6

*Id.* at 486. The Court therefore granted Spence judgment as a matter of law on Pitts' equal protection claim.

Having overturned both of the jury's verdicts in favor of Pitts, the Court denied the motions of Pitts' current and former counsel made pursuant to 42 U.S.C. § 1988 for attorneys' fees and expenses, on the basis that Pitts was no longer a prevailing party. Pitts appeals.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and this court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's decision to grant judgment as a matter of law, viewing the record evidence in the light most favorable to Pitts, as the verdict winner, and drawing all reasonable inferences in his favor. We have cautioned that a court should grant judgment as a matter of law "sparingly." *Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003). A court must not weigh evidence, engage in credibility determinations, or substitute its version of the facts for the jury's. Only if the record is "critically deficient of the minimum quantum of evidence" upon which a jury could reasonably base its verdict will we affirm a court's grant of judgment as a matter of law. *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 211 (3d Cir. 2009) (internal quotation omitted).

## III.

Pitts contends that the District Court erred in concluding that the evidence was insufficient to support the jury's illegal seizure verdict in his favor. Pursuant to the parties' agreement, the Court instructed the jury that the Fourth Amendment "protects persons from being subjected to unreasonable searches and seizures by police." App. at 520. The Court explained that Pitts was required to demonstrate by a preponderance of the evidence: (1) that Spence "intentionally handcuffed [Mr. Pitts], and placed him in the back seat of a patrol vehicle, and towed and impounded [his]

vehicle[;]" (2) "that those acts subjected Mr. Pitts to a seizure[;]" and (3) that "the seizure was unreasonable." App. at 520-21. With respect to reasonableness, the jury heard only that an arrest of a person constitutes an unreasonable seizure if not supported by probable cause. The jury was told to consider in its probable cause assessment "whether the facts and circumstances available to Corporal Spence would warrant a prudent police officer in believing that Mr. Pitts had committed or was committing a crime." App. at 521.

We agree with Pitts that the evidence was sufficient to permit the jury to conclude that Spence subjected Pitts to an unlawful seizure.[2] With regard to Pitts' detention, Spence testified that at the time that he detained Pitts, he had not finished his investigation and had not decided whether Pitts "should be arrested for anything at that point." App. at 461. Additionally, Spence and Pitts both testified that Spence had not read Pitts his *Miranda* rights at that time. Spence testified only that he detained Pitts because Spence feared for his safety, an assertion the jury could have found not credible because Spence failed to include any mention of that fear in his contemporaneous crime report. It follows that the District Court necessarily weighed the evidence and did not view it in the light most favorable to Pitts when it concluded that Pitts'

---

[2] With respect to the District Court's holding that the jury's verdict on the illegal seizure and false arrest claims were facially inconsistent, we conclude that the verdicts, to the extent they were inconsistent, were reconcilable. A court has a "'duty to attempt to read the verdict in a manner that will resolve inconsistencies.'" *Mosley v. Wilson*, 102 F.3d 85, 90 (3d Cir. 1996) (quoting *City of L.A. v. Heller*, 475 U.S. 796, 806 (1986) (Stevens, J., dissenting)). Here, the verdicts were reconcilable on the basis that the instructions permitted the jury to conclude that Pitts' detention was an unlawful seizure, and there was sufficient evidence to support that determination. Moreover, the instructions permitted the jury to conclude that the search and seizure of Pitts' car was an unlawful seizure, and there was also sufficient evidence to support that determination.

detention was reasonable as a matter of law in light of Spence's asserted fear.

Moreover, it was error for the Court to rely on Fourth Amendment principles regarding investigatory detentions because the jury was not instructed on that jurisprudence. Even if Spence had an articulable suspicion that Pitts had committed a crime, the jury was informed only of the law regarding probable cause. The jury could have concluded on the evidence that probable cause was lacking; and thus, based on the instructions given, the evidence was sufficient to support Pitts' claim that Pitts' detention was unlawful.

With regard to the towing and inventory search of Pitts' car, Spence conceded at trial that he lacked probable cause to conduct a search of Pitts' car. Spence testified that he considered the towing necessary to prevent the possibility of another altercation or further damage to Pitts' car, and conceded that he did not search the car for safety reasons or to look for a gun. The jury, however, could have found that Spence was not credible and could have concluded that Spence unlawfully searched the car in order to search for the gun that Mitchem had accused Pitts of threatening to use. The Court necessarily weighed the evidence and did not view it in the light most favorable to Pitts when it concluded that there was no evidence to support a suggestion of pretext and that Spence's asserted fear rendered the towing and inventory search reasonable as a matter of law. It was also error for the Court to consider inventory-search jurisprudence in its analysis because the jury was not given an instruction thereon. Based on the instructions given, the evidence was sufficient to support the jury's verdict, and the District Court erred in concluding otherwise.

Pitts further asserts that the District Court erred in concluding that the evidence was insufficient to support the jury's verdict in Pitts' favor on his equal protection claim. The Court informed the jury that "[t]he Equal Protection Clause of the 14th Amendment to the United States Constitution . . . guarantees each and every person that they will not be denied their fundamental rights in an arbitrary or

9

discriminatory manner." App. at 518. The Court explained that it was Pitts' burden to demonstrate by a preponderance of the evidence that Spence was motivated by a discriminatory purpose, or "an intent or purpose to discriminate against [Pitts] . . . based upon [Pitts]' membership in a protected class." App. at 519. It was also Pitts' burden to demonstrate that Spence's conduct had a discriminatory effect, which "is shown where the plaintiff is a member of a protected class, he is similarly situated to members of that class, and that he was treated differently than members of the unprotected class." App. at 519-20. The jury was informed that it could consider direct or circumstantial evidence in its deliberations and that neither form of evidence was superior to the other.

We agree with Pitts that the evidence circumstantially demonstrated that Spence violated Pitts' rights to equal protection. For example, the jury was entitled to consider Spence's admittedly inaccurate reporting of the incident. Spence acknowledged that he did not record that he spoke with Pitts first upon arriving at the scene, that Pitts accused Spence of being racist, that Spence handcuffed Pitts and placed him in his patrol car before interviewing Mitchem and Wykpisz, or that Spence did not try to interview Pitts after he concluded his investigation. Spence explained that he "didn't feel the need" to explain and that "there was no reason to say" that Pitts had accused Spence of being racist because that exchange was "irrelevant to the crimes that occurred between [Pitts] and Mr. Mitchem." App. at 405-06. The jury, however, was entitled to disregard this testimony as incredible. The District Court's conclusion that Spence's inaccurate reporting was the fault of Pitts' decision to remain silent, a right that he was entitled to exercise under the Fifth Amendment, was not only in direct conflict with Spence's testimony, but also necessarily resulted from the Court's substitution of its view of the facts for the jury's.

The jury was also entitled to consider Spence's testimony regarding his manner of investigating the incident. Spence admitted that he did not question Mitchem's statement that Pitts told Mitchem that he was going to get a gun. Indeed, Spence's crime report made no mention of

10

Spence having interviewed anyone other than Wykpisz or Mitchem at the scene.[3] And Spence admitted that he did not give Pitts an opportunity at the scene to rebut Mitchem's allegation. Spence agreed that because Mitchem reported that Pitts was the one who had threatened to retrieve a gun, "[t]hat was good enough for [him] to end that part of the investigation." App. at 398. The jury could have deemed this testimony suggestive that Spence was motivated by discriminatory purpose and that his conduct had a discriminatory effect.

Similarly suggesting an equal protection violation was the testimony of Pauline Reid, a witness to the altercation and Pitts' confrontation with Spence. Reid testified that Spence was "agitated" and "elevated" when speaking with Pitts, and "was not listening to what [Pitts] was trying to explain." App. at 304, 305, 309. Reid confirmed that she was so concerned for Pitts' wellbeing after watching Spence's demeanor towards him that she followed Pitts in Spence's patrol car back to the police station. She stated that she felt Pitts had been treated unfairly because the officers "bypassed [Pitts] and went to the other person. They didn't really listen to [Pitts]. When they came back, no one was listening . . . ." App. at 309. This observation of unequal treatment supported Pitts' assertion that Spence treated him dismissively. The testimony circumstantially demonstrated that Spence acted with a discriminatory purpose and effect.

The jury could have also given weight to Spence's post-investigation conduct. Spence charged Pitts with aggravated menacing, a charge that requires that the defendant place the victim in fear of imminent physical

---

[3] Spence testified that he attempted to interview the witnesses at the scene, but that they informed him that they did not see anything, and then dispersed. The jury was entitled to discredit this testimony on the basis of Spence's failure to include any mention of his interview attempts in his crime report, as well as the testimony of Wykpisz, who agreed that "there were several people watching the fight as it happened." App. at 373.

11

injury, 11 Del. C. § 602(a), for having "CHASED VICTIM WYKPISZ WITH A LONG WOODEN POLE." App. at 67. At trial, however, Wykpisz testified that he was not afraid that Pitts would strike him, and in fact turned his back to Pitts to walk back to the shop. The jury could have concluded that Spence was aware that Wykpisz did not feel threatened, and acted with discriminatory purpose and effect by bringing an improper charge against Pitts.[4] Moreover, Spence acknowledged that he simultaneously sent the warrants for Mitchem and Pitts to the arraigning judge, but his warrant for Pitts was detailed, and his warrant for Mitchem was not. The warrant for Pitts emphasized in capital letters the alleged conduct supporting the basis of each charge. The warrant for Mitchem, on the other hand, capitalized names and locations. It also failed to include any description of Mitchem's alleged conduct that supported the charges against him. These unaccounted for differences provided support for the jury's verdict in favor of Pitts.

The above sampling of evidence, much of which the District Court failed to mention, was sufficient to support the jury's verdict in favor of Pitts on his equal protection claim. In concluding that there was no evidence that Spence was motivated by a discriminatory purpose and engaged in conduct that had a discriminatory effect, the Court necessarily weighed the evidence, engaged in credibility determinations, and substituted its view of the facts for the jury's. This exceeded the Court's role and was therefore in error.[5]

---

[4] This conclusion would not have been impermissibly inconsistent with the jury's verdict in favor of Spence on Pitts' malicious prosecution claim. Neither the instructions nor the general verdict form required the jury to conclude that every charge Spence brought against Pitts was supported by probable cause. Thus, the jury could have concluded that any one of the six charges brought against Pitts was supported by probable cause to find in favor of Spence on Pitts' malicious prosecution claim.

[5] Because we conclude that the District Court erred in granting Spence's motion for judgment as a matter of law, we

12

## IV.

This case does not present one of those infrequent occasions in which the record evidence is so critically deficient that the jury's verdict should be overturned. To the contrary, when viewing the evidence in the light most favorable to Pitts, as we must, we conclude that the evidence amply supported Pitts' claims. Accordingly, we will reverse the judgment of the District Court and reinstate the jury's verdict and damages award in Pitts' favor. We will also vacate the District Court's denial of the motions of Pitts' current and former counsel for attorneys' fees and expenses under 42 U.S.C. § 1988, with instructions that the District Court consider those motions on the merits.

---

need not address Pitts' remaining contention that the District Court abused its discretion in partially denying his motion to compel the production of documents.