NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1431
_____

TROY TAQUELL ALVIN,

Appellant

v.

MICHAEL CALABRESE;
JEFFREY KARP


_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-04-cv-00384)
District Judge:  Honorable Mary A. McLaughlin
_____

Submitted Under Third Circuit LAR 34.1(a)
September 23, 2011
_____

Before:  AMBRO, CHAGARES, and VANASKIE, <u>Circuit Judges</u>

(Opinion filed:  December 22, 2011)
_____

OPINION
_____

AMBRO, Circuit Judge

Troy Alvin sued Officers Michael Calabrese and Jeffrey Karp under 42 U.S.C. § 1983. He alleged that the officers seized him without reasonable suspicion in violation of the Fourth Amendment. He also alleged that the officers stopped him because he is African-American in violation of his equal protection rights. At the close of evidence in a jury trial, the District Court granted the officers' motion for judgment as a matter of law on Alvin's equal protection claim. The jury — answering only one question on the verdict sheet — returned a verdict against Alvin on his Fourth Amendment claim, finding that neither Calabrese nor Karp had "seized" him.

Alvin claims the jury's verdict is against the clear weight of the evidence. In addition, he argues that the District Court erred when granting the officers' motion on his equal protection claim and when instructing the jury on potential damages. We affirm the District Court's ruling on Alvin's equal protection claim and its instructions on damages, but reverse the Court's ruling on Alvin's motion for a new trial on his Fourth Amendment claim.[1]

## I. Background

We write solely for the parties and recite only those facts necessary for our decision. On April 4, 2002, police radio announced that an armed robbery had just occurred at a hotel on Freemansburg Avenue in Bethlehem Township. The description

---

[1] The District Court had jurisdiction based on 28 U.S.C. §§ 1331 and 1343(a)(3). We have jurisdiction over this appeal under 28 U.S.C. § 1291.

given of the robbers was that of two black males dressed in dark clothing. No vehicle description was given.

Officer Calabrese of the Palmer Township Police heard the dispatch while on routine patrol. Approximately 15 minutes later he was driving on Freemansburg Avenue when he passed a minimart and noticed two black males — Troy Alvin and Markeith Webbs — in the minimart parking lot. Alvin, who was standing by the passenger-side door of an SUV, was wearing a tan leather jacket over a dark grey sweatshirt, blue jeans, and black boots. Webb, Alvin's cousin, was wearing blue jeans and a tan jacket over a black and tan shirt. Webb was using the minimart payphone. The minimart was four miles from the hotel that had been robbed, approximately a five-to-nine-minute drive.

Calabrese pulled his patrol car into the lot, parked behind the green SUV, and then approached the two men. When Alvin asked why Calabrese wanted to speak with them, Calabrese advised him that they fit the possible description of two individuals involved in a robbery in Bethlehem Township. Alvin then gave Calabrese his identification. Calabrese told Alvin that other officers from Bethlehem Township would arrive shortly to assess whether he and Webb were in fact involved in the robbery. Calabrese testified on cross-examination that he told the two men "that if they weren't involved in the robbery or they were not wanted for questioning for anything else, they could go then."

Calabrese returned to his patrol car — without handcuffing Alvin — and called in the information on Alvin's identification card, which was not a Pennsylvania driver's license. In fact, neither Alvin nor Webb had a valid driver's license. Shortly thereafter,

3

County Communications reported to Calabrese that there was an outstanding domestic relations warrant for Alvin related to the non-payment of child support.

While Calabrese was calling in the identification information, Officer Karp, also of the Palmer Township Police, arrived at the minimart after hearing on police radio that Calabrese was there with two black males. Karp went to the location to act as Calabrese's back-up per department policy.

After Calabrese was advised of Alvin's outstanding warrant, he asked for and received confirmation that the County Sheriff wanted Alvin held on the warrant. Alvin was then arrested, patted down, and found to be in possession of 17 individually wrapped bags with a white substance, which were eventually tested and determined to contain crack cocaine. Officers from Bethlehem Township arrived later, and eventually cleared Alvin and Webb as suspects with respect to the robbery.

Alvin was subsequently convicted on drug charges relating to the crack cocaine, and he served a state sentence. However, on direct appeal of Alvin's drug conviction, the Pennsylvania Superior Court ruled that Officers Calabrese and Karp seized Alvin for an investigative detention with insufficient suspicion to believe that he had engaged in criminal activity. The Court ruled that the evidence of the outstanding warrant and the confiscated illegal drugs should have been suppressed at the state court criminal trial.

Alvin then sued Calabrese and Karp, arguing that the officers unlawfully seized him prior to his arrest on the domestic relations warrant. As noted, the District Court, at a jury trial, directed defendants' verdict on Alvin's equal protection claim, and the jury found for Calabrese and Karp on the Fourth Amendment claim.

4

Alvin then moved for "judgment notwithstanding the verdict or, in the alternative, for a new trial under Federal Rule of Civil Procedure 59" he alleged because, among other things, (1) the jury's verdict was against the clear weight of the evidence, (2) the District Court erred in granting Calabrese's and Karp's motion for a judgment as a matter of law under Federal Rule of Civil Procedure 50 on Alvin's "racial profiling" claim, and (3) it erred in ruling that Alvin was not entitled to compensatory damages for his incarceration that resulted from the discovery of the crack cocaine on his person. The District Court denied the motion.

## II. Fourth Amendment Claim

A. Standard of Review

As noted, Alvin seeks a judgment notwithstanding the verdict or, alternatively, a new trial on his Fourth Amendment claim. We review de novo a district court's denial of a motion for judgment notwithstanding the verdict, known as judgment as a matter of law under Rule 50(b). Trabal v. Wells Fargo Armored Serv. Corp., 269 F.3d 243, 249 (3d Cir. 2001). We must view the evidence in the light most favorable to the verdict winner and draw all reasonable inferences in its favor. Pitts v. Delaware, 646 F.3d 151, 155 (3d Cir. 2011). A judgment notwithstanding the verdict may be granted under Rule 50(b) "only if, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." Trabal, 269 F.3d at 249 (quoting Powell v. J.T. Posey Co., 766 F.2d 131, 133-34 (3d Cir. 1985)). As for a motion for a new trial under Rule 59 made on the ground that the jury's verdict is against the

5

weight of the evidence, we review for abuse of discretion. Montgomery County v. Microvote Corp., 320 F.3d 440, 445 (3d Cir. 2003).

"Deferential review is appropriate when considering whether a verdict is against the weight of the evidence 'because the district court was able to observe the witnesses and follow the trial in a way that we cannot replicate by reviewing a cold record.'" Greenleaf v. Garlock, Inc., 174 F.3d 352, 366 (3d Cir. 1999) (quoting Roebuck v. Drexel Univ., 852 F.2d 715, 735 (3d Cir. 1988)). "[N]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." Williamson v. Consol. Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991). Such a "stringent standard" is necessary to protect against a "denigration of the jury system." Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1076 (3d Cir. 1996) (en banc).

B. Alvin's Motion for Judgment Notwithstanding the Verdict

Alvin did not properly move for judgment notwithstanding the verdict on his Fourth Amendment claim because he did not move for a directed verdict before his case was submitted to the jury. "In order to preserve an issue for judgment n.o.v. [notwithstanding the verdict], the moving party must timely move for a directed verdict, and specify the grounds for that motion." Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 183 (3d Cir. 1992). "[A] Rule 50(b) motion for judgment notwithstanding the verdict may not be made on grounds that were not asserted in a motion for directed

6

verdict." Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 220 n.18 (3d Cir. 2009) (quoting Abraham v. Pekarski, 728 F.2d 167, 172 (3d Cir. 1984)).

The parties do not address the issue in their briefs, but our review of the record reveals no indication that Alvin moved for a directed verdict under Rule 50(a) before his case was submitted to the jury. As a result, he could not have later moved for judgment notwithstanding the verdict under Rule 50(b). Furthermore, he seems to have abandoned seeking judgment as a matter of law on appeal. His briefs to our Court exclusively request a new trial, not a judgment in his favor. Because it is unpreserved and abandoned, we affirm the District Court's denial of Alvin's motion for judgment notwithstanding the verdict. We thus turn to Alvin's motion for a new trial on his Fourth Amendment claim.

C.  "Seizures" under the Fourth Amendment

The Fourth Amendment prohibits "unreasonable searches and seizures . . . ." U.S. Const. amend. IV. "As such, any seizure inquiry has two steps: Was there in fact a seizure? If so, was that seizure reasonable?" United States v. Smith, 575 F.3d 308, 313 (3d Cir. 2009). Alvin claims that the jury's verdict with respect to step one — that Calabrese and Karp did not "seize" him within the meaning of the Fourth Amendment — is against the weight of the evidence.

"[N]ot every interaction between a police officer and a citizen is protected by the Fourth Amendment." Smith, 575 F.3d at 312. An encounter "will not trigger Fourth Amendment scrutiny unless it loses its consensual nature . . . . 'Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a

7

citizen may we conclude that a 'seizure' has occurred.'" Florida v. Bostick, 501 U.S. 429, 434 (1991) (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)).

Furthermore, when a person claims his liberty is restrained by an officer's "show of authority," a seizure does not occur unless the person yields to that show of authority. California v. Hodari D. , 499 U.S. 621, 626 (1991); Smith, 575 F.3d at 313. "[T]he test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." Hodari D., 499 U.S. at 628.

Alvin argues that the jury "failed completely in its assigned task" of applying the law to the facts of his case, as evidenced by its verdict that the officers did not seize him prior to his arrest on the domestic relations warrant. He speculates that the jury's verdict must have been "the product of improper sympathy for the police officers or animus toward" him. As a result, he claims that he is entitled to a new trial.

More specifically, Alvin argues that the jury ignored four important circumstances that indicate a reasonable person in his position would not have felt free to leave prior to his arrest: (1) his experience of having been stopped by police on prior occasions; (2) Calabrese's telling him to "[h]old on[,] Bethlehem Township is coming out to see if you are the actual perpetrators;" (3) Calabrese's retaining his identification card while waiting for the Bethlehem Township police; and (4) Calabrese's parking his patrol car behind Webb's SUV.

8

Among other authorities, Alvin points to our decision in United States v. Brown, which he argues makes "absolutely plain" that when a police officer tells a person to wait until someone else arrives to identify him as the perpetrator of a crime, no reasonable juror can believe that the person is free to leave. 448 F.3d 239, 245-46 (3d Cir. 2006). In Brown, we held that a police officer's statement to Brown and his friend that "a robbery victim was being brought over to identify them as possible suspects and, if they were not identified, they would be free to go — necessarily implying that they were not free to leave" — was "a clear show of authority." 448 F.3d at 245. The officer also "demanded" that the men submit to a pat-down. Id. We held that Brown "clearly submitted to this show of authority" by "turning to face the police car and placing (or moving to place) his hands on the vehicle," and so had been seized within the meaning of the Fourth Amendment. Id. at 246.

In United States v. Smith, we elaborated on the basis of our holding in Brown.

> The officer told Brown he was not free to go until the robbery victim arrived. Brown had already submitted to this show of authority (the officer's demand for him to stay) when the officer asked him to face the car and place his hands on the hood. . . . Brown already had submitted by following the officer's order to stay put. . . . [T]he police officer clearly stated the suspect was not free to leave and the suspect complied.

575 F.3d at 315-16. Thus, the officer's words and actions would have conveyed to a reasonable person that he was being ordered to restrict his movement.

To be sure, the similarities between the undisputed facts of Brown and this case, even when viewed in the light most favorable to Calabrese and Karp, are striking. Other

9

undisputed facts — for example, that other police officers, not just a victim, were coming to identify Alvin and that Calabrese held onto Alvin's identification while waiting for other officers — further the suggestion that Alvin was seized prior to his arrest. Given these undisputed facts, Alvin could have moved for judgment as a matter of law, citing our decision in Brown, as to this particular issue at the close of evidence. See Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120, 128 (3d Cir. 2003) (noting that whether a seizure has occurred may be determined by a district court, as a matter of law, without resort to the jury). But he did not.[2]

Even if the jury's verdict was contrary to the great weight of evidence, the "stringent standard" necessary to obtain a new trial in these circumstances requires a showing that "the jury's verdict resulted in a miscarriage of justice" or that the verdict "cries out to be overturned or shocks our conscience." Sheridan, 100 F.3d at 1076;

---

[2] The jury was not instructed on Brown. Instead, they were instructed on the general rules of when a seizure occurs.

> A seizure occurs when a police officer[] restrains a person in some way, either by means of physical force or by a show of authority that the person obeys.

> Of course, a seizure does not occur every time a police officer approaches someone to ask a few questions. Such consensual encounters are important tools of law enforcement and need not be based on any suspicion of wrongdoing.

> However, an initially consensual encounter with a police officer[] can turn into a seizure if in view of all the circumstances a reasonable person would have believed that he was not free to end the encounter.

> If a reasonable person would have believed that he was not free to leave[,] then at that point the encounter has turned into a seizure for purposes of the Fourth Amendment.

Williamson, 926 F.2d at 1353.  In light of our decision in Brown and the undisputed facts suggestive of a seizure, we believe the verdict cries out to be overturned.  We thus reverse the ruling on Alvin's motion for a new trial on his Fourth Amendment claim.

### III.  Equal Protection Claim

A.  Standard of Review

We review de novo a district court's grant of a motion for judgment as a matter of law under Rule 50(a).  Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 88 (3d Cir. 2000).  A motion for judgment as a matter of law "is mandated where the facts and the law will reasonably support only one conclusion." Id.  (quoting McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 356 (1991)).

B.  Racial Profiling

To make an equal protection claim in the racial profiling context, a plaintiff must show that law enforcement actions:  "(1) had a discriminatory effect and (2) were motivated by a discriminatory purpose." Bradley v. United States, 299 F.3d 197, 205 (3d Cir. 2002).  To prove discriminatory effect, a plaintiff must "show that she is a member of a protected class and that she was treated differently from similarly situated individuals in an unprotected class." Id. at 206.  That effect "may be proven by naming similarly situated members of an unprotected class who were not selected for the same [treatment] or, in some cases, by submitting statistical evidence of bias." Id.

The District Court granted the officers' Rule 50(a) motion because Alvin failed to offer any evidence of discriminatory effect.  The Court noted the lack of "any evidence

11

that had this been a situation of white suspects . . . [,] the police would not also have stopped [two white men]."

The closest Alvin came to offering evidence of discriminatory effect was his own testimony that "it's common practice for them to do it [stop black men]." Alvin seems to be referring to police in general and not Officers Calabrese and Karp specifically. Regardless, this conclusory allegation is insufficient to create an issue of fact for the jury.

## IV. Damages

Alvin claims the District Court erred in its instructions to the jury by limiting the potential window of damages to the 8 minutes and 44 seconds between Calabrese's first approach to Alvin's arrest on the domestic relations warrant. He argues that he should have been permitted to seek damages, at the very least, for the four days between his arrest and his arraignment on the drug charges. We disagree.[3]

"'Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy — including (where appropriate) damages for physical injury, property damage, injury to reputation, etc.; but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution.'" Hector v. Watt, 235 F.3d 154, 157 (3d Cir. 2000) (quoting Townes v. City of New York, 176 F.3d 138, 148 (2d Cir. 1999)). The alleged damages Alvin claims to have suffered after his arrest were not the direct result of an

---

[3] We generally review jury instructions for abuse of discretion, but our review is plenary when the issue is whether the instructions misstated the law. Armstrong v. Burdette Tomlin Mem'l Hosp., 438 F.3d 240, 245-46 (3d Cir. 2006); Hopp v. Pittsburgh, 194 F.3d 434, 440 (3d Cir. 1999).

invasion of his privacy in violation of the Fourth Amendment. Rather, they were the result of the officers' discovery of an outstanding domestic relations warrant and incriminating drug evidence. The discovery of the warrant and the drugs broke the causal chain between the alleged constitutional violation and the alleged damages suffered. We affirm the District Court's damages instructions.

*   *   *   *   *

We affirm the District Court's order as it relates to Alvin's equal protection claim and the Court's instructions on damages, but reverse the order as it relates to Alvin's motion for a new trial on his Fourth Amendment claim.