NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 16-1191

AMIR FATIR,
                                    Appellant

v.

STANLEY TAYLOR; THOMAS CARROLL; DAVID PIERCE;
JANET HENRY, MARVIN CREASY; JAMES SATTERFIELD;
RONALD PAWLOWSKI; FLOYD DIXON;
RALPH BAILEY; JOYCE TALLEY; JERRY PLATT, TERRY YODER;
TANYA SMITH

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-06-cv-00694)
District Judge: Honorable Gregory M. Sleet

Submitted Under Third Circuit LAR 34.1(a)
September 27, 2016

Before: AMBRO, SMITH, and FISHER, <u>Circuit Judges</u>

(Opinion filed:  September 28, 2016)

OPINION*

AMBRO, <u>Circuit Judge</u>

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Amir Fatir brought a lawsuit alleging that the conditions at Delaware's James T. Vaughn Correctional Center violated the Eighth Amendment's ban on cruel and unusual punishment. Some of his claims went to trial, where a jury ruled against him. He now argues that we should set aside the jury's verdict and enter one in his favor or, in the alternative, grant him a new trial. Though Fatir presented evidence, much of which was uncontested, of disturbing conditions of confinement, a losing party at trial faces a steep challenge when asking a court to interfere with the result. The District Court concluded that Fatir cannot meet that burden, and we agree.[1]

Fatir filed a *pro se* complaint in 2006 that contained 50 counts against an array of defendants. By 2015, when the case went to trial, *pro bono* counsel had been appointed and the litigation had been streamlined substantially. At trial, Fatir contended that the Correctional Center's D-Building, where he was housed for a period of time, suffered from chronic mold in the bathroom, dirty air, contaminated water, soiled mattresses, overcrowding, and overheating. He alleged that these conditions, whether considered individually or based on the overall environment that they collectively created, violated the Eighth Amendment of the Constitution. To prevail under the Eighth Amendment, Fatir had to meet a two-step test. First, he had to prove that the conditions deprived him "of the minimal civilized measure of life's necessities" and posed a "substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). Second, he needed to establish that the defendants acted with "deliberate

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction per 28 U.S.C. § 1291.

indifference." *Id.* (internal quotation marks omitted). Under this second hurdle, a "prison official cannot be found liable . . . unless [he] knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Despite the jury's unanimous disagreement, Fatir claims that he met these requirements and is therefore entitled to judgment as a matter of law under Federal Rule of Civil Procedure 50. We have noted that it is "only on rare instances that a jury's verdict in a civil case should be overturned." *Pitts v. Delaware*, 646 F.3d 151, 152 (3d Cir. 2011). Thus, a party cannot obtain post-trial Rule 50 relief if the "record contains the minimum quantum of evidence from which a jury might reasonably" have arrived at its verdict. *Glenn Distributors Corp. v. Carlisle Plastics, Inc.*, 297 F.3d 294, 299 (3d Cir. 2002) (internal quotation marks omitted). We exercise plenary review over the District Court's resolution of Fatir's Rule 50 motion. *Id.*

Even assuming Fatir could show that any reasonable jury would conclude that the conditions in the D-Building satisfied the first requirement of *Farmer*, we agree with the District Court that the second prong of that test presents an insurmountable hurdle. Specifically, there is at least a "minimum quantum of evidence," *id.* (internal quotation marks omitted), that the defendants did not act with deliberate indifference. For instance, one of the defendants testified that he had made yearly requests for funding for stainless steel showers to help prevent mold. Joint Appendix ("JA") 823–24. Another said that she had asked for mold removal in the D-Building to be given priority. JA 631–32. And a

3

third discussed ways in which the defendants attempted to protect the bathroom's concrete walls from moisture, thereby reducing mold. JA 670–71.[2]

Fatir presented evidence that the defendants' efforts to improve conditions were unsuccessful, but this does not mean that any reasonable jury would have found deliberate indifference. Indeed, in an opinion denying Rule 50 relief, the District Court commented on a conversation it had with jurors following the trial. Though they were "deeply disturbed by the evidence they heard during the course of the trial concerning the conditions at the prison facility," they felt constrained to rule for the defendants because of an "insufficient factual record upon which to base a finding of deliberate indifference." JA 10 n.1. This is hardly an unreasonable interpretation of the testimony, and the verdict must therefore stand.

In the alternative, Fatir asks for a new trial under Federal Rule of Civil Procedure 59. This relief is appropriate "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991). Fatir says that a new trial is necessary because the defendants exposed the jury to a number of inadmissible statements. We review the District Court's decision on his Rule 59 motion for abuse of discretion. *Montgomery Cty. v. Microvote Corp.*, 320 F.3d 440, 445 (3d Cir. 2003).

---

[2] We use this testimony on the mold issue as an example. Our review of the trial, however, was not limited to the testimony noted here. We have examined the entirety of the record and concluded that there is no basis for disturbing any portion of the jury's verdict.

One example cited by Fatir is that counsel for the defendants said during opening statements that a "cruel and unusual punishment claim . . . is usually done in the context of, say, torture." JA 525–26. This statement is false. The Supreme Court has been clear that the Eighth Amendment "proscribes more than physically barbarous punishments" and instead "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation marks omitted). Moreover, we share Fatir's concern that this statement was designed to ask the jury to draw the impermissible conclusion that his allegations fell short under the Eighth Amendment merely because his conditions did not involve torture.

Also during opening statements defense counsel told the jury that "[i]t's important to note that at the James T. Vaughn Correctional Center, it is a state facility, it is not privately run, so it is funded by the taxpayer dollars." JA 527. Fatir took issue with this comment because he thought it might motivate the jurors to give a lower award (or no award at all) based on the understanding that they, as taxpayers, would be on the hook for the judgment.

These remarks, as well as others mentioned by Fatir, did not go unaddressed. Instead, the District Court did an admirable job of providing the jury with curative instructions. For instance, after counsel made the comment about Eighth Amendment cases typically involving torture, the Court said that it was "not an accurate statement of the law" and told the jurors to disregard it. JA 553. The Court then reminded the jury of the correct legal standard. *Id.* And, on the issue of taxpayer funds, it said that "[w]hat is

going to come out of our pocketbooks as taxpayers, if anything, as a result of this case is not a relevant consideration for you to determine." JA 905.

We have a "presumption that juries follow the instructions given by district courts." *United States v. Hakim*, 344 F.3d 324, 330 (3d Cir. 2003). A party can overcome that presumption only in limited circumstances where it can show, among other things, that "there is an overwhelming probability that the jury [was] unable to follow [the instructions]." *United States v. Newby*, 11 F.3d 1143, 1147 (3d Cir. 1993) (internal quotation marks and citation omitted). Here the District Court was satisfied that its curative instructions worked. JA 11–12. Given that our review is limited not only by the presumption of effectiveness, but also by the commitment of Rule 59 motions to the sound discretion of the District Court, we find no basis to veer from its judgment.

\* \* \* \* \*

In sum, the District Court concluded that Fatir could not satisfy the standards for either a judgment as a matter of law or a new trial. We agree and therefore affirm.[3]

---

[3] We thank Fatir's attorneys, who handled the case *pro bono* in the District Court and our Court, for their work. Though the challenge they faced in trying to overcome a jury's verdict was ultimately insurmountable, we appreciate their excellent briefs.