PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2229
_____

STEVEN R. GRABOFF

v.

THE COLLERAN FIRM; FRANCIS T. COLLERAN;
AMERICAN ACADEMY OF ORTHOPAEDIC
SURGEONS;
AMERICAN ASSOCIATION OF ORTHOPAEDIC
SURGEONS,

American Academy of Orthopaedic Surgeons;
American Association of Orthopaedic Surgeons,

Appellants

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-10-cv-01710)
Honorable Joel H. Slomsky, District Judge
_____

Submitted under Third Circuit LAR 34.1(a)
December 20, 2013

BEFORE: JORDAN, VANASKIE, and
GREENBERG, Circuit Judges

(Filed: February 20, 2014)
_____

Clifford E. Haines
Lauren A. Warner
Haines & Associates
1835 Market Street
Suite 2420
Philadelphia, PA 19103

 Attorneys for Appellee

Daniel E. Rhynhart
Christopher M. Guth
Blank Rome
130 North 18th Street
One Logan Square
Philadelphia, PA 19103

 Attorneys for Appellants
_____

OPINION OF THE COURT
_____

2

GREENBERG, <u>Circuit</u> <u>Judge</u>.

## I. INTRODUCTION

This matter comes on before this Court on an appeal from an order of the District Court entered March 28, 2013, denying defendants-appellants, the American Academy of Orthopaedic Surgeons and the American Association of Orthopaedic Surgeons' (together the "AAOS"), motion for judgment as a matter of law and for judgment notwithstanding the verdict. For the reasons we set forth we will affirm the March 28, 2013 order.

The AAOS is a voluntary professional organization for orthopaedic surgeons, which has adopted professional standards, including member grievance procedures. Though most orthopaedic surgeons are members of the AAOS, it is not a licensing authority and consequently an orthopaedic surgeon need not be an AAOS member to practice orthopaedic surgery. This case is an outgrowth of an AAOS grievance proceeding that an AAOS member, Dr. Menachem Meller, initiated against another AAOS member, plaintiff-appellee Dr. Steven R. Graboff, a California-based orthopaedic surgeon. Dr. Meller filed the grievance claiming that Dr. Graboff wrote an inaccurate report based on incomplete information that was used against him in a civil malpractice case. The report charged that Dr. Meller departed from reasonable and accepted standards of medical care in treating the plaintiff in the malpractice case. After determining that Dr. Graboff's testimony violated the AAOS's Standards of Professionalism, which require its

members to provide honest and accurate testimony when serving as expert witnesses, the AAOS suspended Dr. Graboff from membership for two years. The AAOS published a description of the grievance proceedings in AAOS Now, an AAOS newsletter. Dr. Graboff, who has resigned from the AAOS, then sued the AAOS, alleging that the AAOS Now article (the "article") was actionable both as defamatory and a false-light invasion of privacy because it selectively recounted the circumstances of the grievance proceedings to imply that he had testified falsely.

At the conclusion of a trial the District Court submitted the case to the jury to answer interrogatories. The jury answered that the article did not contain any false statements, but did contain statements portraying Dr. Graboff in a false light, and it awarded Dr. Graboff $196,000 in damages. Though the jury through its answers did not address the ultimate question of whether the AAOS was liable on either the defamation or false-light claim, the District Court treated the answers as having found in favor of Dr. Graboff on the false-light claim and in favor of the AAOS on the defamation claim. The AAOS subsequently moved for a judgment notwithstanding the verdict, but the Court denied the motion.

The AAOS appeals, arguing that, under the District Court's treatment of the jury's answers, the answers were inconsistent because, as a matter of law, the jury's finding that the AAOS had not made false statements foreclosed the possibility that it could be liable on the false-light claim. Thus, the AAOS contends that it was entitled to a judgment in its favor on both claims. We, however, hold that the answers can be

4

reconciled and thus were not inconsistent. But we conclude that the District Court erred by treating the jury's findings as returning a verdict in Dr. Graboff's favor only on the false-light claim as we are satisfied that the findings established that the AAOS was liable on both the false-light and defamation claims. Nevertheless, the error was harmless and, accordingly, we will affirm the order of March 28, 2013.

## II. BACKGROUND

In 2007, Dr. Graboff drafted an expert report that was used in Jones v. Meller, a malpractice case against Dr. Meller filed in the Court of Common Pleas of Philadelphia County, Pennsylvania. Dr. Graboff's draft report stated that Dr. Meller's treatment of the malpractice plaintiff departed from reasonable and accepted standards of medical care. Although Dr. Graboff had included the words "Draft Report" in bold, underlined letters at the top of his report, the law firm representing the plaintiff in the Jones case, without Dr. Graboff's consent or knowledge, whited out the "Draft Report" designation and used the report to obtain a settlement from Dr. Meller.

Dr. Meller filed a grievance against Dr. Graboff with the AAOS asserting that Dr. Graboff had provided false testimony in the malpractice case against him. Dr. Meller based his grievance on the AAOS's Standards of Professionalism which, among other provisions, require orthopaedists serving as expert witnesses to provide honest and accurate testimony. The AAOS enforces these standards through its Professional Compliance Program Grievance Procedures. These procedures provide that

AAOS members can file grievances with the AAOS when they believe that a fellow member has engaged in unprofessional conduct. In Dr. Graboff's case there were two hearings before AAOS administrative bodies. At the first hearing, Dr. Meller confronted Dr. Graboff with x-rays of the Jones plaintiff that Dr. Graboff had not seen when he prepared his expert report. Based on these x-rays, Dr. Graboff admitted that his report was flawed and that Dr. Meller's treatment of his patient had satisfied the appropriate standard of care. Dr. Graboff also testified that he believed his report had been preliminary, and that he had not expected it to be used in litigation. Ultimately, however, the AAOS Board of Directors reached a final decision that Dr. Graboff had violated its Standards of Professionalism, and it suspended him from membership in the AAOS for two years.

Pursuant to its bylaws, the AAOS published a summary of the grievance proceedings against Dr. Graboff in AAOS Now, a publication available to both AAOS members and the public. The article described the Jones case and the grievance proceedings against Dr. Graboff, but did not mention Dr. Graboff's exculpatory testimony from the grievance proceedings that he considered the report to have been preliminary, that it had been altered, and that it had been used improperly to settle the case. Instead, the article explained that Dr. Graboff "was initially absolute in his opinion that [Dr. Meller] had violated the standard of care," but later "contradicted himself" and "admitted his report had been based on lack of information." JA 562. The article was publicly available on the AAOS website and appeared in online searches of Dr. Graboff's name.

On April 16, 2010, Dr. Graboff instituted this action

6

against the AAOS alleging, as we have explained, that the article was actionable as it was defamatory and was a false light invasion of privacy. Though these charges set forth separate causes of action, the actions are related and include, as will be seen, certain common elements. At the ensuing 12-day jury trial, Dr. Graboff testified that the article omitted the fact that his report had been a draft, made it seem that he had access to the x-rays prior to drafting the report, and implied that he intentionally had falsified information rather than explaining that the report had been a preliminary draft based on limited information. Dr. Graboff, who, until the time of the publication of the article, frequently testified as an expert witness for both plaintiffs and defendants, including defendants' insurance companies, also testified that his credibility as an expert witness suffered following the publication of the article. Consequently, several of his longstanding clients terminated their relationships with him and, when testifying, he was subject to impeachment because of the article and his suspension from AAOS membership.

As we have indicated, the jury concluded that the AAOS had not made false statements in the article, but had made statements that portrayed Dr. Graboff in a false light and awarded him $196,000 in damages. As we also have indicated, the District Court treated the jury's findings as returning a verdict in favor of Dr. Graboff on the false-light-invasion-of-privacy claim, but in favor of the AAOS on the defamation claim.

Following the return of the verdict, the AAOS moved for "judgment as a matter of law and for judgment notwithstanding

7

the verdict." JA 1219-20.[1] Although the motion referred to both Federal Rule of Civil Procedure 50(b), dealing with the renewal of motions after trial of earlier motions for a judgment as a matter of law, and Rule 59, dealing with motions for a new trial, and the District Court treated the motion as seeking both remedies, the AAOS made the motion exclusively under Rule 50(b) because Rule 59 does not deal with motions for entry of judgment, the relief that the AAOS requested in the District Court.[2] The Court in an exceptionally comprehensive opinion dated March 28, 2013, denied the AAOS's motion and, in effect, sustained the damages verdict. See Graboff v. Colleran Firm,

---

[1] An amendment of the Federal Rules of Civil Procedure in 1991 substituted the term "judgment as a matter of law" for the term "judgment notwithstanding the verdict" but did not make a substantive change in the law. 9 Moore's Federal Practice – Civil § 50.03 (Redish 2013); see also Fed. R. Civ. P. 50 advisory committee's note.

[2] On this appeal the AAOS has expanded on the relief it sought in the District Court as it asks as an alternative to granting it a judgment as a matter of law that we remand the case for a new trial. As we have indicated, notwithstanding the AAOS's reference to Rule 59, the District Court treated the Rule 59 motion as seeking either a judgment as a matter of law or a new trial and it denied both motions. We see no reason why the District Court should have granted a new trial and we therefore will not remand the case for that purpose.

8

D.C. Civ. No. 10-1710, 2013 WL 1286662 (Mar. 28, 2013).[3]

## III. JURISDICTION and STANDARD OF REVIEW

The District Court had jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332 and we have jurisdiction under 28 U.S.C. § 1291. We review the District Court's denial of a motion for judgment as a matter of law de novo, Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 211 (3d Cir. 2009), and ordinarily apply the same standard as a district court applies in considering a motion for judgment as a matter of law. Johnson v. Campbell, 332 F.3d 199, 204 (3d Cir. 2003). That standard requires a court of appeals to assess "whether, viewing the evidence in the light most favorable to sustaining the verdict, a reasonable jury could have found for the prevailing party." Id.; see also Lakeside Resort Enterps., LP v. Bd. of Sup'rs of Palmyra Twp., 455 F.3d 154, 156 (3d Cir. 2006). Of course, in this case inasmuch as we reach our result by our treatment of the verdict and the AAOS does not challenge the sufficiency of the evidence to support the verdict, we make our determination by plenary application of legal principles.

---

[3] Dr. Graboff also sued defendants other than the AAOS and asserted claims for breach of contract, tortious interference of contract, and commercial disparagement, but we need not describe the proceedings on those aspects of his case because the proceedings with respect to these parties and claims have been terminated and are not at issue on this appeal. We note, however, that the District Court addressed at length issues beyond those that we now consider.

9

## IV. DISCUSSION

On this appeal we address the question of whether the jury's finding that the article did not contain false statements precluded the District Court from treating the jury's answers to the interrogatories to support the entry of a judgment in favor of Dr. Graboff on his false-light-invasion-of-privacy claim. The AAOS argues that "the jury's finding that the [a]rticle contained no false statements about Graboff is incompatible (or at least inconsistent) with its finding that the same [a]rticle portrayed Graboff in a false light." Appellants' reply br. at 6-7.[4] The AAOS, in making its contention that the verdict was internally incompatible or inconsistent, points out that the Court's instructions defined falsity broadly to include both false statements and true statements making a false implication. Inasmuch as it is presumed that a jury applies the court's instructions as given, the AAOS argues that the jury necessarily found that the AAOS did not make any statements in the article that included a false implication with respect to Dr. Graboff.[5] Therefore, in its view, the Court erred by treating the findings as

[4] Although we believe that the AAOS did not raise this issue fully in the District Court either before the jury was dismissed or in its post-trial motion, we need not decide whether the AAOS waived the argument because Dr. Graboff does not argue that it did so. See Marra v. Phila. Housing Auth., 497 F.3d 286, 312 n.21 (3d Cir. 2007).

[5] We presume that the jury followed the District Court's instructions when arriving at its verdict. See Weeks v. Angelone, 528 U.S. 225, 234, 120 S.Ct. 727, 733 (2000).

returning a verdict in favor of Dr. Graboff for false light invasion of privacy. Rather, it contends that the Court should have read the answers to the interrogatories to reach a conclusion that the AAOS was not liable for either defamation or false light invasion of privacy.

Although we conclude that the AAOS's contentions do not have merit, we also conclude that the District Court erred in its treatment of the jury's answers for, contrary to that Court's view, the answers support findings that the AAOS was liable for both defamation and false light invasion of privacy rather than only for the latter claim. However, for the reasons we set forth, we conclude that the Court reached the correct result in denying AAOS's post-trial motion, and its error thus was harmless. Therefore, we will affirm the denial of AAOS's post-trial motion and, in effect, uphold the judgment entered against the AAOS.[6]

A.  Legal Framework and Jury Instructions on
     Defamation and False Light Invasion of Privacy

In light of the AAOS's incompatibility or inconsistency contention with respect to the jury's verdict, we discuss the elements of defamation and false light invasion of privacy under Pennsylvania law as the parties agree that Pennsylvania law is

_____

[6] It is important to recognize that neither the District Court nor this Court has had the advantage of having precedential opinions of the Pennsylvania Supreme Court on all of the state-law issues in this case.

11

applicable in this case.

## 1. Defamation

A claim for defamation claim under Pennsylvania law includes the following elements:

> (1) The defamatory character of the communication.
> (2) Its publication by the defendant.
> (3) Its application to the plaintiff.
> (4) The understanding by the recipient of its defamatory meaning.
> (5) The understanding by the recipient of it as intended to be applied to the plaintiff.

Tucker v. Fischbein, 237 F.3d 275, 281 (3d Cir. 2001) (quoting 42 Pa. Const. Stat. Ann. § 8343(a) (West 1998)). Procedurally, a trial court at the outset should decide whether a statement is capable of a defamatory meaning.[7] Id. (citing Thomas Merton

---

[7]Though the District Court apparently did not make this determination, neither party has raised this issue on this appeal, so we need not address whether the District Court's bypassing of this issue was an error. In any event, the oversight would have been harmless because the statements at issue undoubtedly are capable of a defamatory meaning. See Hill v. Reederei F. Laeisz G.M.B.H., Rostock, 435 F.3d 404, 420 (3d Cir. 2006) (holding that harmless error requires asking whether it is "highly probable that the error did not affect the outcome of the case") (internal quotation marks omitted).

Ctr. v. Rockwell Int'l Corp., 442 A.2d 213, 215-16 (Pa. 1981)). If the court determines that a statement can support such a meaning, the jury then must decide "whether the recipient actually understood the statement to be defamatory." Id. at 281-82 (citing Corabi v. Curtis Publ'g Co., 273 A.2d 899, 904 (Pa. 1971)).

A statement is defamatory if "it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Id. at 282 (quoting Birl v. Phila. Elec. Co., 167 A.2d 472, 476 (Pa. 1960) (internal quotation marks omitted)). But the statement must do more than merely embarrass or annoy the plaintiff; it must provoke "'the kind of harm which has grievously fractured [one's] standing in the community of respectable society.'" Tucker v. Phila. Daily News, 848 A.2d 113, 124 (Pa. 2004) (quoting Scott-Taylor, Inc. v. Stokes, 229 A.2d 733, 734 (Pa. 1967)).

A defendant may avoid liability for defamation if it shows that its statements were "substantially true." See 42 Pa. Const. Stat. Ann. § 8343(b)(1) (West 2013); see also Dunlap v. Phila. Newspapers, Inc., 448 A.2d 6, 15 (Pa. Super. Ct. 1982) ("The proof of truth must go to the gist or sting of the defamation.") (quoting Sack, Libel, Slander, and Related Problems at 50-51, 137-38 (1980) (internal quotation marks omitted)). However, a defamatory statement must be viewed in context, Baker v. Lafayette Coll., 532 A.2d 399, 402 (Pa. 1987), and a defendant cannot use truth as a defense where "the implication of the communication as a whole was false," even if the statement is "literally accura[te]," Dunlap, 448 A.2d at 15.

13

Though we are not aware of any Pennsylvania Supreme Court case on the point, inferior Pennsylvania courts applying Pennsylvania law have concluded that defamation may be established where a statement, viewed in context, creates a false implication. See, e.g., id. (adopting defamation by innuendo theory); Mzamane v. Winfrey, 693 F. Supp. 2d 442, 476-78 (E.D. Pa. 2010) (collecting cases approving a defamation-by-implication theory).

## 2. False Light Invasion of Privacy

In Pennsylvania there can be four separate torts when there has been an invasion of privacy, one of which, publicity placing a person in a false light, is at issue here. Marks v. Bell Tel. Co., 331 A.2d 424, 430 (Pa. 1975). Pennsylvania has adopted the definition of false light invasion of privacy from the Restatement (Second) of Torts, which imposes liability on a person who publishes material that "is not true, is highly offensive to a reasonable person, and is publicized with knowledge or in reckless disregard of its falsity." Larsen v. Phila. Newspapers, Inc., 543 A.2d 1181, 1188 (Pa. Super. Ct. 1988) (en banc) (citing Restatement (Second) of Torts § 652E); see also Vogel v. W.T. Grant Co., 327 A.2d 133, 135-36 (Pa. 1974) (adopting Restatement (Second) definitions for all four invasion of privacy claims). Although to the best of our knowledge the Pennsylvania Supreme Court has not addressed the contours of falsity in the false-light-invasion-of-privacy context, the Superior Court has defined falsity broadly in that context. A plaintiff can establish falsity by showing that a defendant "selectively printed or broadcast true statements or pictures in a manner which created a false impression." Larsen,

14

543 A.2d at 1189. Thus, even where a publication is literally true, "discrete presentation of information in a fashion which renders the publication susceptible to inferences casting one in a false light entitles the grievant to recompense for the wrong committed." Id. at 1189. The Superior Court has drawn this broad definition from defamation law, which permits recovery where a publication was true, but implied falsehoods. Id. (citing Dunlap, 448 A.2d at 15).

Applying this standard in Larsen, the Superior Court allowed the plaintiff's claim to survive a motion to dismiss where he alleged that a series of articles, although literally true, conveyed a false impression that he had lied under oath. Id. See also Krajewski v. Gusoff, 53 A.3d 793, 809-10 (Pa. Super. Ct. 2012) (reversing dismissal of false-light claim where factual statements in article "suggest[ed] a causal relationship" that could not be proven), appeal dismissed, ____A.3d ____, 2014 WL 321859 (Pa. Jan. 29, 2014); Santillo v. Reedel, 634 A.2d 264, 267 (Pa. Super. Ct. 1993) ("A false light claim can be established where true information is released if the information tends to imply falsehoods.").

Falsity with respect to a defendant's statements thus carries the same meaning in the defamation and false-light-invasion-of-privacy contexts; indeed, the Superior Court drew its definition of falsity in the false-light-invasion-of-privacy context from its corresponding definition in the defamation context. Larsen, 543 A.2d at 1189. And Pennsylvania inferior courts consistently apply the same analysis to both types of claims when the causes of action are based on the same set of underlying facts. See, e.g., Krajewski, 53 A.3d at 809 (using

15

discussion of statements as to defamation claim in false-light-invasion-of-privacy context). Accordingly, publication of factually correct statements that convey a false impression can be actionable as defamation (if the statements had a grievous effect on one's reputation), or actionable as a false light invasion of privacy (if the statements would be highly offensive to a reasonable person). Clearly there is little difference between these claims in dealing with the consequences of a defendant's statements.

### 3. The Jury Instructions and the Interrogatories

The District Court's instructions correctly told the jury that a defendant's statements in the defamation context could be false if the statements included untrue statements or if the statements implied something that was untrue. See JA 1198 ("A communication or any portion of it is defamatory if in context its stated or implied meaning is defamatory."); JA 1199 ("A communication may be false either because it contains untrue or incomplete statements of fact, or because its implication is untrue."). The Court also correctly told the jury that the AAOS's statements were presumed to be false, and that the AAOS had the burden to overcome this presumption and "to prove by a fair preponderance of the evidence that the communication was substantially true." JA 1199. The Court, however, did not specifically charge the jury that a finding that the AAOS published a false statement was a prerequisite for Dr. Graboff to recover for false light invasion of privacy. Rather, the Court stated that the AAOS could be liable for false light invasion of privacy if it published statements that placed Dr.

16

Graboff "before the public in a false light" and if the publication would be highly offensive to a reasonable person. JA 1202. This charge was correct as far as it went though it omitted an explanation that the AAOS could be liable in a false-light case if it made a factually untrue statement.

As we have explained, the District Court did not submit the case to the jury by asking for general verdicts on the two alleged torts. Instead, the Court submitted the case to the jury on interrogatories which, in addition to including a damages question that the jury needed to address only if it answered the liability questions in favor of Dr. Graboff, asked only three questions regarding liability on the tort claims involved on this appeal: (1) did Dr. Graboff show, by a preponderance of the evidence, that the AAOS made statements in the article that were either false, or (2) portrayed Dr. Graboff in a false light, and (3) did the AAOS act knowingly or with reckless disregard for the truth of its statement? JA 1262. The jury found that the article did not contain false statements but that it did contain statements that portrayed Dr. Graboff in a false light and that the AAOS acted knowingly or with reckless disregard for the truth. The completed interrogatories and answers read:

> 6. Do you find that Dr. Steven Graboff proved by a preponderance of the evidence that the American Academy of Orthopaedic Surgeons and American Association of Orthopaedic Surgeons ('AAOS') made statements in AAOS Now about Dr. Steven Graboff that:
>
> (a) Were false?

17

____YES            __X__ NO

(b) Portrayed Dr. Steven Graboff in a false light?

__X_YES            _____ NO

  ***If your answer to Question No. 6(a) or 6(b) is "YES", please proceed to Question No. 7. If your answers to Question No. 6(a) and 6(b) are "NO", please proceed to Question No. 9.***

  7. Do you find that the American Academy of Orthopaedic Surgeons and American Association of Orthopaedic Surgeons ('AAOS') knew or acted in reckless disregard for the truth or untruth of statements in *AAOS NOW* that were false or portrayed Dr. Steven Graboff in a false light?

__X_YES            _____ NO[8]

We reiterate that the District Court treated these answers as

---

[8] This finding was sufficient to establish mens rea for both claims. See American Future Sys., Inc. v. Better Bus. Bureau, 923 A.2d 389, 400 (Pa. 2007) (explaining that a party may liable for defamation against a non-public figure if it acted negligently); Krajewski, 53 A.3d at 807 (requiring knowledge that the statements would be offensive to a reasonable person to recover on false light claim).

making a finding in favor of Dr. Graboff for false light invasion of privacy and in favor of the AAOS on the defamation claim.

B. The Jury's Verdict is Consistent

The AAOS challenges the jury's verdict as "incompatible (or at least inconsistent)." Appellants' reply br. at 6-7. The AAOS argues that because the Court defined falsity as including "true statements that create a false impression," id. at 5, the jury's finding in interrogatory 6(a) that the AAOS had not published false statements precludes imposing liability on it either for defamation or false light invasion of privacy. In effect, the AAOS is arguing that, inasmuch as the jury found that it did not make false statements about Dr. Graboff, it could not have made statements portraying him in a false light.

We approach the incompatibility and inconsistency argument recognizing that "inconsistent jury verdicts are an unfortunate fact of life in law, and should not, in and of themselves, be used to overturn otherwise valid verdicts." Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000). Rather, when faced with a seemingly inconsistent verdict, a court, to the extent possible, should read the verdict to resolve the inconsistencies.[9] Pitts v. Delaware,

---

[9] The AAOS requests that we reverse the judgment and enter judgment in its favor, or, alternatively, that we reverse the judgment and remand the case for a new trial. Appellants' reply br. at 7. The first request directly conflicts with Mosley v. Wilson, 102 F.3d 85, 91 (3d Cir. 1996), in which we held that the district court erred by "directing a judgment notwithstanding the jury's verdict on one claim on the sole ground that it was

646 F.3d 151, 156 n.2 (3d Cir. 2011); see also Mosley v. Wilson, 102 F.3d 85, 90 (3d Cir. 1996) (noting that a court has a "'duty to attempt to read the verdict in a manner that will resolve inconsistencies'" (quoting Los Angeles v. Heller, 475 U.S. 796, 806, 106 S.Ct. 1571, 1576 (1986) (Stevens, J. dissenting))); Repola v. Mobark Indus., Inc., 934 F.2d 483, 494 (3d Cir. 1991) (characterizing duty to resolve inconsistencies in jury verdicts as a constitutional obligation).

We conclude that the answers to the interrogatories can be reconciled but that the District Court did not correctly treat the answers to resolve a possible inconsistency in them when it concluded that the jury found for the AAOS on the defamation claim and for Dr. Graboff on the false-light-invasion-of-privacy claim. The Court, applying Pennsylvania law, explained to the jury that Dr. Graboff could prove his defamation claim if the AAOS published either untrue statements or true statements that implied something untrue. The Court explained that the AAOS could be liable for false light invasion of privacy if it published statements that portrayed Dr. Graboff in a false light, but in so defining a false-light claim did not distinguish between untrue statements or statements that implied something untrue. Overall, when the entire charge is considered, it is clear that the Court split the bases for finding liability under the two causes of

inconsistent with the jury's verdict on another claim." Although reversal and remand for a new trial is one potential approach to resolving inconsistent verdicts, see Acumed LLC, 561 F.3d at 217-18, where possible we have attempted to reconcile verdicts that seemingly were inconsistent. See, e.g., Pitts, 646 F.3d at 156 n.2.

action at issue into two possibilities: i.e., factually false statements or statements whether or not true that implied something untrue.

The jury found that the AAOS had not published false statements, but had published statements that portrayed Dr. Graboff in a false light. Under the instructions, these responses support a finding of liability for both defamation and false light invasion of privacy; after all, as the District Court explained to the jury, it was not necessary for the jury to find a statement was untrue for there to be a recovery on a defamation claim. JA 1199. What the Court did, in effect, was to ask the false-light interrogatory twice, the first time as part of what the Court regarded to be the defamation claim interrogatory because falsity by implication was included in the definition of falsity and the second time in what the Court believed to be the false-light claim interrogatory. When we view the interrogatories in this way, the verdict was not inconsistent because the evidence supported a conclusion that the AAOS had made statements that were false inasmuch as they portrayed Dr. Graboff in a false light but that the statements were not factually false.

We cannot say that the jury did not follow the District Court's instructions in returning its verdict for, notwithstanding the Court's explanation that falsity includes statements false in themselves and statements false by implication, the Court separated the two categories of falsity and directed the jury to consider the categories in different answers, and the jury did exactly that. But we believe that the Court erred in its treatment of the verdict because the legal consequence of the jury's finding that the AAOS published statements portraying Dr.

21

Graboff in a false light was that the AAOS was liable on both claims even though the jury found that the article did not make a false statement.[10]  Properly applied, the jury's determination trumps the AAOS's argument that its finding that the AAOS did not make false statements about Dr. Graboff precluded a finding of liability on either claim.

The confusion here could have been avoided if the Court had combined the false statement and false light interrogatories into a single three-part interrogatory requiring an affirmative liability answer if the jury found that the AAOS made false statements about Dr. Graboff, portrayed him in a false light, or did both.  But inasmuch as the Court split the bases for a finding of liability it was required to enter a judgment in accordance with the answers the jury gave to the interrogatories by, if possible, reconciling the answers.  Though it attempted to do so we reiterate our conclusion that it erred when it treated the answers as finding for the AAOS on the defamation claim, but against it on the false-light claim.  In fact, the jury did not find for or against Dr. Graboff on the defamation claim as the Court did not submit the case to it to make an ultimate finding on either the defamation or false-light claim.  Rather, the jury simply answered the questions that the Court submitted to it and, as we have explained, the jury's answers, in addition to supporting a judgment for Dr. Graboff on the false-light claim, supported a judgment that the AAOS was liable for defamation inasmuch as it could have defamed Dr. Graboff without making

---

[10] It cannot be contended seriously that the article did not have a grievous effect on Dr. Graboff's reputation, an element of a defamation charge.

22

any statements that were false in themselves about him.

But even though the District Court did not read the verdict as it could have and, indeed, should have to resolve any seeming inconsistency in the verdict, the error was harmless because once we reconcile the liability aspects of the verdict, as we have done, the damages finding easily stands. The jury calculated damages for defamation and false light invasion of privacy together:

> 10. Please state the amount of damages, if any, that Dr. Steven Graboff suffered as a result of the liability you found against the American Academy of Orthopaedic Surgeons and American Association of Orthopaedic Surgeons ("AAOS").
> . .
>
> For Intentional Interference with Prospective Contractual Relations, Defamation, and/or Publication in a False Light:
>
> > Past loss of earnings in a lump sum:
> > $_____140,000___
> > Future loss of earnings in a lump sum:
> > $_____0_____
> > Noneconomic loss in a lump sum:
> > $_____56,000_____

JA 1264. Because the jury assessed damages for both claims as a single unit, our reading of the verdict to provide that the AAOS was liable both for defamation and false light invasion of

23

privacy allows the damages award to stand. In these circumstances, the District Court's error in treating the jury's answers to the interrogatories so as to exonerate the AAOS on the defamation claim was harmless because the error had no effect on the outcome of the case. See Hill v. Reederei F. Laeisz G.M.B.H., Rostock, 435 F.3d 404, 411 (3d Cir. 2006) (explaining that errors are harmless where it is "highly probable that the error did not affect the outcome of the case" (internal quotation marks omitted)). Regardless of whether the jury found for Dr. Graboff only for false light invasion of privacy, as the District Court believed, or on both claims, its damage calculation would have been the same.[11]

## V. CONCLUSION

For the foregoing reasons we will affirm the order of March 28, 2013, denying AAOS's motion for judgment as a matter of law and for judgment notwithstanding the verdict.

---

[11] We also point out that Dr. Graboff has not cross-appealed from the judgment in favor of the AAOS on his defamation claim or asked us to remand the case for a new trial on damages only on both the defamation and false-light claims or, without disturbing the judgment in his favor on the false-light claim, on the defamation claim alone.

24