**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1234
_____

NUMAH BARKUE WILSON,
Appellant

v.

OFFICER JOEL JEAN, Badge Number 5320;
OFFICER KYLE SMITH, Badge Number 1782;
OFFICER WILLIAM FITZGERALD, Badge Number 1134,
individually and as police officers for the City of Philadelphia;
OFFICER JOHN DOE(S), individually and as police officers for the City of Philadelphia
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 2-15-cv-01793)
District Judge:  Honorable Mark A. Kearney
_____

Submitted Under Third Circuit LAR 34.1(a)
September 27, 2016
_____

Before: AMBRO, SMITH and FISHER, <u>Circuit Judges</u>

(Opinion Filed: September 29, 2016)
_____

OPINION[*]
_____

_____

[*]  This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SMITH, Circuit Judge

Numah Barkue Wilson filed this civil rights action after Philadelphia Police officers arrested him at a protest. Having failed to prevail at trial, he now appeals the order of the District Court granting partial summary judgment in favor of defendant police officers on his 42 U.S.C. § 1983 claim for false arrest, the order of the Court denying his motion for judgment as a matter of law and for a new trial, and the Court's denial of his request for a particular jury instruction. For the reasons that follow, we will affirm.

I.

On July 7, 2014, Wilson participated in a protest in which he and others from his community gathered in front of a Philadelphia Fire Department station to express dissatisfaction with the manner in which the Department had responded to a nearby fire that claimed the lives of several children, including two of Wilson's nieces. Wilson was arrested for disorderly conduct, briefly detained, and then released. He was not charged with an offense. In April 2015, Wilson filed this action against Philadelphia Police Officers Joel Jean, Kyle Smith, and William Fitzgerald (hereinafter, "the officers") alleging § 1983 claims for retaliation in violation of his First Amendment right to free speech and assembly, excessive force, and false arrest. He also alleged state law claims for excessive force, false arrest, false imprisonment, assault, and battery.

Conceding that certain of Wilson's claims would need to be resolved by a jury, the

officers sought summary judgment as to Wilson's federal claims for retaliation and false arrest, and his state law claims for false arrest and false imprisonment. In response to the officers' motion, Wilson dropped his retaliation claim. In an opinion and order dated October 30, 2015, the District Court granted the officers' motion with respect to the § 1983 false arrest claim because it determined that the officers were entitled to qualified immunity, but denied the motion with respect to the related state law claims.

The case proceeded to a two-day jury trial in November 2015. Video of the protest, culled from news footage, featured prominently at trial, and various excerpts were played during opening statements, closing arguments, and during the testimony of several witnesses. The video contained general depictions of the protest and depicted some of Wilson's conduct. At one point, the video shows Wilson gesturing and yelling at police officers, while, in another excerpt, he can be seen gesturing and yelling at a police officer standing in front of the fire station before moving away from the doors to the fire station. Although there is no video of his actual arrest, the video shows Wilson being led away by the defendants, as he struggles and screams "murderers."

Three friends and acquaintances of Wilson, who had also attended the protest, testified that Wilson had given the police no cause to arrest him, but that the officers nevertheless arrested him and "slammed him on the ground," "pull[ed] his hand, twist[ed] it, hit him a couple of times with a nightstick, push[ed] him to the ground, and pretty

3

much dragged him away." (App. 115, 117, 150.)[1] Wilson testified that he was "pushed on the ground and I hit face forward, cracked one of my tooth, then I notice a pile of officers on top of me." (App. 126.) He testified that the officers grabbed him and threw him on the ground, and that "next thing I know I'm getting hit left and right on my body while I'm on the ground." (Id.) He stated that the officers had injured his arm, and he denied cursing, screaming, or blocking the fire station.

The officers testified and denied the allegations. They described a "chaotic scene" where protesters were "belligerent," "shouting obscenities," and "very uncooperative." (App. 135.) There was testimony that a water bottle was thrown at police officers, and that individuals were lying down blocking the fire station doors and standing in front of the fire station. Officers Jean and Smith testified that they heard Wilson "shouting obscenities," but neither could remember the specific language or words that he used. (App. 134, 137-38.) Officer Fitzgerald testified that Wilson was among a crowd of people blocking the fire station and "trying to . . . cause whatever trouble they could [so that] the [fire] truck [would] not be able to get out." (App. 140.) Officer Fitzgerald also testified that he saw Wilson "be unruly and trying to incite the crowd to keep them protesting," and that a supervisor had pointed out Wilson and instructed him to "take [Wilson] off the street." (App. 140, 141.)

---

[1] On cross-examination, one of these witnesses acknowledged that, as he had testified in his deposition, he and Wilson had "disobeyed the request of the officers to move back, and . . . continued to move back and forth." (App. 151.)

4

At the close of evidence, counsel for Wilson made a motion under Federal Rule of Civil Procedure 50(a) for judgment as a matter of law with respect to false arrest and false imprisonment; the motion was denied without prejudice. Counsel also requested the following jury instruction regarding the First Amendment:

> In considering whether there is probable cause to arrest, an officer must also consider the rights of the plaintiff under the First Amendment to the United States Constitution. It has long been established that criminal statutes such as disorderly conduct may not be used to punish those who challenge police authority or otherwise engage in protected First Amendment activity. Mr. Wilson's right in a democracy to disagree with a police officer is fully protected. The right to challenge official authority is among the fundamental principles that distinguishes this nation from much of the world. The crime of disorderly conduct may not be used to punish anyone exercising a protected First Amendment right. While not all speech is protected by the First Amendment, the right as a citizen in a democracy to disagree with a police officer is not unprotected. The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation fro[m] a police state.

(App. 26, 155-56.) Noting that Wilson had abandoned his First Amendment retaliation claim, the Court declined to give his proposed instruction. Although the Court had sustained an objection to discussion of the First Amendment during opening statements, it permitted Wilson's counsel to argue in closing that Wilson had merely been exercising his right to free speech at the protest, and not engaging in disorderly conduct.

The jury found in favor of the officers on all counts. Wilson filed a post-trial motion under Federal Rules of Civil Procedure 50(b) and 59(a), renewing his request for judgment as a matter of law on the false arrest and false imprisonment claims, and

5

seeking a new trial based on the District Court's decision at summary judgment and its refusal to instruct the jury on the First Amendment. In an opinion and order dated February 1, 2016, the Court denied Wilson's motion.

This appeal followed. Wilson argues that the District Court erred in granting qualified immunity and partial summary judgment to the officers, and that the Court erred in denying his motion for judgment as a matter of law and refusing to give his requested jury instruction.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's "grant of summary judgment and the legal issues underpinning a claim of qualified immunity," Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014), and summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the denial of a motion for judgment as a matter of law de novo, applying the same standard as the district court. Graboff v. Colleran Firm, 744 F.3d 128, 134 (3d Cir. 2014). In doing so, we "assess whether, viewing the evidence in the light most favorable to sustaining the verdict, a reasonable jury could have found for the prevailing party." Id. (quotation marks omitted). Finally, we exercise plenary review to determine "whether the jury instructions stated the proper legal standard," and "[w]e

review the refusal to give a particular instruction or the wording of instructions for abuse of discretion." United States v. Leahy, 445 F.3d 634, 642 (3d Cir. 2006) (quotation marks omitted); see also Langbord v. U.S. Dep't of Treasury, --- F.3d ---, 2016 WL 4073269, at *20 n.17 (3d Cir. 2016) (en banc).

III.

A.    Qualified Immunity

Title 42 U.S.C. § 1983 "provides a cause of action against any person who, acting under color of state law, deprives another of his or her federal rights." Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005). Qualified immunity, however, "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quotation marks omitted). In determining whether a right is "clearly established," the inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), overruled on other grounds by Pearson, 555 U.S. at 236; Anderson v. Creighton, 483 U.S. 635, 640-41 (1987) (holding, in a case in which probable cause was disputed, that the court should have considered whether it was "clearly established that the circumstances with which [the police officer] was confronted did not constitute probable cause"). Thus, an officer is protected from liability if he "reasonably believes that his or her conduct complies with the law,"

7

Pearson, 555 U.S. at 244, and qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law," Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quotation marks omitted).

Here, the District Court correctly concluded that qualified immunity was appropriate with respect to the § 1983 false arrest claim because the circumstances "disclose[d] substantial grounds for the officer[s] to have concluded [they] had legitimate justification under the law for acting as [they] did." See Saucier, 533 U.S. at 208. Under Pennsylvania law, a person is guilty of disorderly conduct "if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or in violent or tumultuous behavior; (2) makes unreasonable noise; (3) uses obscene language, or makes an obscene gesture; or (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 18 Pa. C.S.A. § 5503(a). A reasonable officer could have believed that arresting Wilson for disorderly conduct was "within the bounds of [an] appropriate police response[]" given Wilson's conduct as depicted in the video of the chaotic protest. See Saucier, 533 U.S. at 208. Accordingly, because it was not clearly established that there was no probable cause to arrest Wilson under the circumstances the officers confronted, qualified immunity was appropriate.[2] We will affirm the order of the District Court

---

[2] Even if the Court erred in granting partial summary judgment, Wilson could not now revive his federal false arrest claim in light of the jury's finding that the officers did have probable cause to arrest him. While Wilson argues that the standard for false arrest under

granting partial summary judgment in favor of the officers.

B.    Judgment as a Matter of Law

Federal Rule of Civil Procedure 50 provides that a district court may grant a motion for judgment as a matter of law if, after a party has been fully heard on an issue at trial, "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). Wilson argues that the evidence was not sufficient to establish that the officers had probable cause to arrest him because the officers were unable to describe specific words or conduct attributable to him, and because the conduct the officers described did not rise to the level of disorderly conduct.

We disagree. Viewing the evidence in the light most favorable to the officers, as we must, there was sufficient testimony from which the jury could conclude that Wilson used "obscene language," engaged in "tumultuous behavior," and that he did so with the requisite intent to support a violation of Pennsylvania's disorderly conduct statute. In addition to the testimony of the officers, video evidence depicted Wilson yelling angrily at a police officer, and a fellow protestor testified that he and Wilson disobeyed an order

_____

Pennsylvania law differs from the standard for false arrest under federal law (because Pennsylvania law requires proof of "willful misconduct"), it is clear from the jury instructions and the verdict sheet that the jury found that the officers had probable cause to arrest Wilson, which is fatal to both federal and state law claims of false arrest. The jury had been instructed that "[a] false arrest is an arrest made without probable cause" (App. 177), and the verdict form required them to determine whether there was a false arrest before proceeding to a separate interrogatory regarding willful misconduct.

9

of the police. As the Supreme Court of Pennsylvania has stated, "whether a defendant's words or actions rise to the level of disorderly conduct hinges upon whether they cause or unjustifiably risk a public disturbance." Commonwealth v. Hock, 728 A.2d 943, 946 (Pa. 1999). A reasonable jury could have concluded from the evidence at trial that Wilson's conduct risked causing a public disturbance, and that the officers therefore had probable cause to arrest and briefly detain him. We will, therefore, affirm the District Court's order denying Wilson's motion for judgment as a matter of law and for a new trial.

C.      Jury Instructions

Finally, the District Court did not abuse its discretion in refusing to give Wilson's requested jury instruction. Wilson elected not to proceed on his First Amendment retaliation claim and proceeded to trial only on his claims for false arrest, false imprisonment, and excessive force.[3] The Court properly instructed the jury with respect to those claims and with respect to Pennsylvania's disorderly conduct statute; Wilson does not contend otherwise. As the Court recognized, Wilson's proposed instruction inaccurately described the exercise of First Amendment rights as a complete defense to a charge of disorderly conduct. See Startzell v. City of Philadelphia, 533 F.3d 183, 204 (3d Cir. 2008) ("[T]he First Amendment is not an absolute shield against a disorderly conduct charge [under 18 Pa. C.S.A. § 5503].") ; Commonwealth v. Mastrangelo, 414 A.2d 54, 56-58 (Pa. 1980) (rejecting a constitutional challenge to the disorderly conduct statute).

---

[3] Wilson did not proceed to trial on his assault and battery claims.

10

Accordingly, the Court, which gave Wilson broad latitude to argue in closing that his conduct was protected First Amendment activity that did not rise to the level of disorderly conduct, did not abuse its discretion, or otherwise err, in refusing to give the requested instruction. See United States v. Hoffecker, 530 F.3d 137, 156 (3d Cir. 2008) ("[T]he [jury instructions] should direct and focus the jury's attention on the evidence given at trial, not on . . . ideas that do not sustain a defense to the charges involved." (quoting United States v. Blair, 456 F.2d 514, 520 (3d Cir. 1972))).

## IV.

We will affirm the orders of the District Court.