NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-1071

_____

Keith Yoho,
                              Appellant

v.

The Bank of New York Mellon Corporation, a corporation; MSBC Securities
Corporation, a corporation; and the Dreyfus Corporation, a corporation

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-17-cv-00917)
District Judge: Honorable J. Nicholas Ranjan

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 10, 2022

Before: AMBRO, BIBAS, and ROTH, Circuit Judges

(Opinion filed: February 1, 2022)

_____

OPINION[*]

_____

AMBRO, Circuit Judge

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Keith Yoho appeals the District Court's grant of summary judgment in favor of his former employer, MSBC Securities Corp.; its sister company, The Dreyfus Corp.; and their parent company, The Bank of New York Mellon (together, "BNYM"). His lawsuit stems from his termination by BNYM in September 2016. He challenges the District Court's disposition of his claims of disability discrimination (for his alleged alcoholism), spoliation of evidence, along with defamation and tortious interference.[1] We affirm the judgment of the District Court because it correctly determined there were no genuine issues of material fact and BNYM was entitled to judgment as a matter of law.[2]

## I.

Yoho worked as a Senior Wholesaler for BNYM from February 2005 through September 2016. Though he excelled in this role and was considered a top performer, Yoho was terminated following an internal investigation into alleged misconduct toward female coworkers at August 2016 sales conferences in Chicago and San Diego. Specifically, Yoho allegedly: (1) told coworker Christine Noland "'your fat ass gives me such a hard-on' or words to that effect," App. at 921, 4; (2) placed a late-night call to Britney Curtin, a junior coworker, inviting her to his hotel room; (3) told coworker Audrey Seybert she was "too old for him to date," and on another occasion touched her

---

[1] Yoho also alleged age discrimination, hostile work environment, retaliation, and corresponding violations of the Pennsylvania Human Rights Act. As he does not appeal the District Court's disposition of these claims, they are waived. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).

[2] The District Court had federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. We have appellate jurisdiction under 28 U.S.C. § 1291.

2

lower back in a way that made her uncomfortable, App. at 5, 921-22; and (4) told coworker Bria Gilbert her Australian accent was "sexy" and that he wanted to use her picture in his marketing materials to increase his sales. App. at 5, 492. Noland brought these allegations to the attention of Raymond Pruett, Yoho's "second-level" manager, who, in turn, communicated these complaints to BNYM's Human Resources Department, which started the investigation. App. at 5-6.

An employee named Thomas Galante headed that investigation, reporting to a group made up of BNYM in-house lawyers, HR personnel, Pruett, and Pruett's supervisor, Joe Moran. Galante interviewed Pruett, Noland, Curtin, Seybert, Gilbert, an employee named Nick Vanderlinden, and Yoho. Galante is blind and relied on a device called a Stenomask to dictate his notes for many of these interviews.[3] On September 7, 2016— the same day Galante interviewed Yoho—BNYM terminated him, alleging he violated its "Code of Conduct" and "Sexual and Other Discriminatory Harassment Policy." App. at 6, 19, 1610-12. Pruett, as Yoho's supervisor, bore final responsibility for this decision and informed Yoho by phone, reading a statement prepared by HR. A few days prior, on September 3, Yoho phoned a person in BNYM's confidential Employee Assistance Program to discuss his purported alcohol abuse. He told his close friend and immediate supervisor, Tim McCormick, about the call; McCormick, in turn, passed this information to Pruett. Alleging BNYM used the sexual misconduct investigation as pretext to fire him, Yoho sued.

---

[3] A Stenomask is a recording device that covers the user's mouth, allowing him to dictate his notes without being heard by others.

## II.

We give a fresh, or plenary, review of motions for summary judgment, applying the same standard as the District Court. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is proper if, after viewing the underlying facts "in the light most favorable to [Yoho]," *id.* (internal quotation marks omitted), "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

Yoho first challenges the District Court's holding that he could not prove disability discrimination because he failed to show pretext on the part of BNYM. To do so, Yoho had to submit evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

Yoho maintains that "inconsistencies" regarding the reasons for and the process surrounding his termination demonstrate pretext. We disagree. He points to inconsistencies in the statements and testimony of witnesses who were interviewed regarding his alleged sexual harassment. But these inconsistencies fall short of showing a lack of truthfulness known to BNYM yet used by it as an excuse to fire him for his alcoholism. Moreover, Yoho admitted to much of the conduct at issue, including making inappropriate remarks to Seybert and Gilbert, and placing a late-night call to Curtin's hotel room. Indeed, the only evidence Yoho cites to show BNYM may have had a

4

discriminatory reason for his termination is his supervisors' general knowledge that he drank and requested help for his alleged alcoholism. But the internal investigation began before Yoho called Employee Assistance, and the record shows BNYM reached a tentative decision to terminate him on September 2, one day *before* he sought assistance. Thus, his supervisors' general knowledge of a possible alcohol problem does not establish a genuine issue of material fact as to why he was fired.

Yoho also claims BNYM was inconsistent in its position on who made the decision to terminate him. The record, however, shows no such inconsistencies. Rather, it identifies Pruett as the "responsible decisionmaker," with other BNYM employees involved in the termination decision. App. at 20. Yoho further claims BNYM was inconsistent as to the date of his termination, pointing to allegedly contradictory evidence indicating either September 2 or September 7. This claim is likewise not supported by the record, which shows, that, while BNYM *tentatively* decided to terminate him on September 2 (pending Galante's interview with Yoho), it made the final decision on September 7, the day he was terminated. As these purported inconsistencies reveal no genuine issues of material fact, Yoho cannot establish pretext necessary to support his disability-discrimination claim. We therefore have no evidence to question BNYM's assertion that it terminated him for cause.

IV.

Yoho next argues he is entitled to summary judgment as a sanction for alleged spoilation of evidence based on BNYM's loss of the original audio recordings of

5

Galante's interview notes.[4]  As noted above, Galante dictated many of his interview notes using a Stenomask recording device.  He then had an intern transcribe the audio recordings into typed notes.  In discovery, BNYM provided Yoho with the typed notes but not the original audio recordings.  Galante later testified that, after the intern transcribed his audio notes, he "misplaced" those recordings.  App. at 21.  Yoho contends this is spoliation of evidence.

We again disagree.  To support a finding of spoliation of evidence, Yoho had to show bad faith on the part of BNYM.  *See Bull*, 665 F.3d at 79 ("No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for.") (internal quotation marks omitted).  But Galante testified he simply misplaced the recordings, and Yoho failed to offer any evidence refuting this testimony.  Likewise, Yoho failed to provide any evidence showing the typed notes would differ in any meaningful way from the lost audio recordings.  Although these facts may show BNYM's investigation was sloppy, Yoho cannot establish a genuine issue of material fact as to its bad faith in losing the audio recordings.

V.

Finally, Yoho contests the District Court's grant of summary judgment on his defamation and tortious-interference claims.  Both are premised on a single statement made by Yoho's close friend and former supervisor, McCormick, to a manager at LoCorr

---

[4] We review the District Court's denial of sanctions for spoliation of evidence for abuse of discretion.  *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012).

Funds, a prospective employer following up on Yoho's resume.[5]  McCormick testified that he tried to be "very complimentary" of Yoho's capabilities.  App. at 25.  When pushed by LoCorr on why Yoho left BNYM, McCormick refused to get into specifics, replying that Yoho was "not here because he simply ran a red light."  App. at 26.  The District Court ruled that this statement was not capable of a defamatory meaning, and, nonetheless, it was true.

On appeal, Yoho argues McCormick's statement "created a defamatory implication" that "put[] it out there that he was a sexual harasser."  Op. Br. at 47.  Under Pennsylvania law,[6] "[a] court must examine the meaning of the allegedly defamatory statement in context" to determine whether "the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate," is capable "of a defamatory meaning."  *Tucker v. Flischbein*, 237 F.3d 275, 282 (3d Cir. 2001) (cleaned up).  We agree with the District Court that McCormick's statement is not capable of a defamatory meaning.  If anything, it implies Yoho was terminated for cause.  Yet "[a] statement that someone has been terminated from employment or terminated for cause, without more, is not defamatory."  *Pilkington v. CGU Ins. Co.*, No. 00-2495, 2000 WL 33159253, at *5 (E.D. Pa. Feb. 9, 2001) (citations omitted).  Moreover, the whole of

---

[5] The District Court found Yoho's tortious-interference claim to be "largely duplicative of [his] defamation claim" because the alleged "tortious conduct at issue is the defamatory statements" made by BNYM.  App. at 25.  We agree, and thus do not consider further Yoho's tortious-interference claim.

[6] The parties agree Pennsylvania law governs Yoho's defamation and tortious-interference claims.

McCormick's testimony shows he was trying to help Yoho land the job, having a genuine and earnest intent to help his former colleague. Besides, as discussed above, Yoho *was* terminated for cause, so any implication meaning as much is true. Because "[t]ruth is an absolute defense to defamation in Pennsylvania," that claim fails. *Bobb v. Kraybill*, 354 Pa. Super. 361, 511 A.2d 1379, 1380 (1986); *see also Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (In Pennsylvania, "[a] defendant may avoid liability for defamation if it shows that its statements were substantially true.") (internal quotation marks omitted).

\* \* \* \* \*

For these reasons, we affirm the District Court's grant of summary judgment in favor of BNYM.