**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-1805

_____

HELEN FORD

v.

COUNTY OF HUDSON;
HUDSON COUNTY DEPARTMENT OF CORRECTIONS,
and in their official and individual capacities;
OSCAR AVILES; DAVID KRUSZNIS

County of Hudson,
Appellant

_____

No. 17-1806

_____

HELEN FORD

v.

COUNTY OF HUDSON;
HUDSON COUNTY DEPARTMENT OF CORRECTIONS,
and in their official and individual capacities;
OSCAR AVILES; DAVID KRUSZNIS

Oscar Aviles,
Appellant

_____

No. 17-1819

_____

HELEN FORD,
Appellant

v.

COUNTY OF HUDSON;
HUDSON COUNTY DEPARTMENT OF CORRECTIONS,
and in their official and individual capacities;
OSCAR AVILES; DAVID KRUSZNIS

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. Action No. 2-07-cv-05002)
District Judge: Honorable Kevin McNulty

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 22, 2018

_____

Before: GREENAWAY, JR., KRAUSE, *Circuit Judges*,
and JONES, *District Judge*.[*]

_____

(Opinion Filed: April 5, 2018)

_____

OPINION[**]

_____

---

[*] The Honorable John E. Jones, III, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

These consolidated appeals and cross-appeal stem from Helen Ford's allegations of retaliation and gender discrimination against the County of Hudson ("the County"), Hudson County Department of Correction ("DOC"), Director Oscar Aviles, and Deputy Warden David Krusznis. A jury concluded that Ford proved one act of gender discrimination, found Aviles and the County liable, and awarded damages. The District Court awarded Ford attorneys' fees and costs. The County and Aviles appeal the District Court's judgment and portions of its post-trial orders. Ford cross-appeals the lower court's judgment as it relates to the award of attorneys' fees, its order denying her request to amend the judgment to include back pay and vacation pay, and its order granting in part and denying in part her motion for attorneys' fees and costs. For the reasons that follow, we will affirm in part, reverse in part, and remand to the District Court for further proceedings consistent with this opinion.

## I. Background

Ford has been a DOC sergeant since 2002. In 2003, Ford gave the County Law Department information about misconduct by the then-director of the DOC, and she complained that she was retaliated against for providing the information. The Internal Affairs Unit later investigated Ford for various matters, and in 2006 she was subsequently suspended; served with Preliminary Notices of Disciplinary Action, which included charges for fraternizing with a parolee and fraudulently preparing a report alleging harassment; and terminated. She appealed her suspension and termination within the

3

civil service system, however, and the Civil Service Commission ultimately reinstated her in September 2009 and awarded back pay after finding that her removal was unwarranted.

In October 2007, Ford filed an initial complaint against the County, DOC, Aviles, and Krusznis alleging gender discrimination and freedom of speech, petition, and association retaliation claims under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1 to -2 (West 2013), as well as gender discrimination and retaliation under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17 (2012), and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 to -42.  In November 2010, Ford then amended her federal complaint to include allegations of discrimination or retaliation during the period of her reemployment; in particular, she asserted that Aviles and Krusznis were responsible for the acts of non-party subordinates Lieutenant Ronald Edwards and Officer Brian Coyne.

The case proceeded to a jury trial, during which the alleged acts of discrimination and/or retaliation presented to the jury were:  "(a) inadequate support staffing in the Training Unit starting in April of 2005"; "(b) bringing disciplinary charges against her in 2006, followed by her suspension and discharge, 2006-09"; "(c) a denial of her use of a vacation day by Lt. Ronald Edwards"; "(d) Partial denial of her request to attend training

4

classes by Edwards";[1] "(e) Officer Brian Coyne's placement of her on a 'do-not-arm' list"; "(f) [Edwards's] failure to notify of class cancellation"; "(g) Coyne's failure to provide one on one firearms remediation training"; "(h) Edwards'[s] denial of request to convert vacation days to sick or furlough days"; "(i) Denial of sick day"; and "(j) Failure to clarify chain of command." JA 184. "The acts claimed to be discriminatory, as distinct from retaliatory, [were] (d) and (g)." *Id.*; *see also* JA 194.

The jury returned a verdict concluding that Ford proved one act of gender discrimination—that is, Edwards's failure to permit Ford to attend a Microsoft training class when a male colleague was given permission to attend—and that Aviles was responsible for that lieutenant's action.[2] The jury found that the County's failure to

---

[1] The "partial denial" refers to the fact that Ford had submitted requests to attend three classes: an Unlawful Harassment/Discrimination class, an Understanding and Managing Diversity in Today's Workplace class, and an Update on A.D.A. class. Edwards denied two out of three of these requests because those classes were for new hires. These requests are distinct from Ford's non-written request to attend Microsoft training classes, which Edwards denied on the basis that either they required pre-requisites or he did not send sergeants to the requested class. Ford learned, though, that a male sergeant attended a Microsoft office publisher class.

[2] While the verdict sheet does not specify the denial of permission to attend the Microsoft training class as the single act of discrimination, this conclusion must follow from the facts that: (1) Aviles was not held liable—directly or under a theory of supervisory liability—for any alleged act of retaliation that violated Ford's rights to free speech and petition; and (2) the jury found that only Edwards committed an act of discrimination, and the only alleged act of gender discrimination identified in the jury instruction that implicates Edwards is act (d). Ford's argument that "the bases for liability involving Edwards' discriminatory conduct are not limited to the denial of attendance at a single computer training class" does not hold water given the jury instructions' express identification of two alleged acts of discrimination, only one of which involved Edwards. Ford Second-Step Br. 39.

5

"adequately train, supervise and enforce its policies as to Krusznis, Aviles, and or their subordinates" resulted in the retaliation against Ford for exercising her right to be free from discrimination. JA 8-10, 160-65. The jury also found that the County discriminated against Ford by subjecting her to an act of retaliation after October 2005 (when Aviles became director) because of her gender but not because she provided information about a superior or superiors. All claims as to Krusznis were denied. The jury awarded Ford $30,000 for emotional distress and $9338.75 in economic damages. The District Court granted Ford's counsel $283,375 in attorneys' fees and $46,787 in costs. It denied the County's and Aviles's motions for judgment as a matter of law and for a new trial, as well as Ford's motion to amend the judgment or for a new trial on damages only.

## II.    Jurisdiction

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have appellate jurisdiction under 28 U.S.C. § 1291.

## III.    Analysis

The parties appeal issues concerning particular trial testimony, findings of liability, damages, and attorneys' fees and costs.[3] As we explain below, our resolution of

---

[3] On appeal, the County argues that: (1) the District Court erred in permitting testimony from four female employees who testified as to sexual assault and harassment by non-parties; (2) the District Court erred in denying judgment for Aviles and the County where denial of the request to attend a Microsoft class was not an adverse employment action and Aviles's supervisory liability for that act was not established; and (3) the District Court erred in denying a partial new trial where the jury's verdict was against the weight of the evidence.

6

the County's challenge to the jury's finding of liability renders moot any discussion of the parties' claims concerning damages and attorneys' fees and costs.

## A. Trial Testimony

On appeal, the County first argues that the District Court erred in permitting testimony from four female employees who testified as to sexual assault and harassment by non-parties. In particular, the County challenges the admission of testimony from: Hana Elezi, who testified regarding sexual harassment by male superior corrections officers in 2007 who stared at her "up and down" in a closed room before telling her she was inappropriately dressed, JA 808; Atronda Lee Clark, who testified she was sexually assaulted in 2003 by her supervising sergeant; Joyrinda Lester, who testified that she was raped in 2003 by the same sergeant; and Esther Ihenakew, who also testified that the same sergeant sexually assaulted her on three occasions in 2003. We review the District Court's evidentiary rulings for abuse of discretion. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

Before trial, the County and Krusznis moved to exclude evidence of prior

---

Aviles, meanwhile, challenges the award of attorneys' fees and costs on the basis that the District Court erred by: (1) not considering the proportion of the successful and unsuccessful claims asserted by Ford; (2) not properly considering the disparity between the amount of damages and attorneys' fees; (3) not further discounting the costs; (4) awarding Ford any attorneys' fees associated with the original complaint in the case; and (5) awarding plaintiff's counsel a fee enhancement.

On cross-appeal, Ford asserts that the District Court: (1) should have amended the final judgment to award back pay; and (2) erred in imposing a reduction of attorneys' fees and costs while granting only a marginal fee enhancement.

complaints under Federal Rule of Evidence 403, arguing that the prior complaints were asserted against non-parties, Ford did not raise claims of sexual harassment in this case, and the nature of the evidence was unfairly prejudicial to the defendants. The District Court rejected these arguments, explaining that "evidence of this nature is generally probative of the issues in this case." ECF No. 138, at 11. In doing so, it relied on our decision in *Hurley v. Atlantic City Police Department*, 174 F.3d 95 (3d Cir. 1999), a gender discrimination in employment case brought against a municipal police department.

In *Hurley*, we upheld admission of testimony about harassment of women within the police department that was not clearly linked to the plaintiff's experience, including "testimony by four women who were associated with the [department] about incidents of sexual harassment and retaliation of which [the plaintiff] had no knowledge until after commencing suit." *Id.* at 107. We concluded that "[e]vidence that women other than the plaintiff were subjected to a hostile work environment clearly meets Rule 401's requirements" even where the plaintiff does not have "knowledge of harassment or pervasively sexist attitudes." *Id.* at 110. This is because "[e]vidence of harassment of other women and widespread sexism is also probative of 'whether one of the principal nondiscriminatory reasons asserted by [an employer] for its actions was in fact a pretext for . . . discrimination.'" *Id.* (alterations in original) (quoting *Glass v. Phila. Elec. Co.*, 34 F.3d 188, 194 (3d Cir. 1994)).

The District Court here, nevertheless, stated that while "the proposed testimony is

probative" under *Hurley*, it was "not satisfied that the probativeness of all the evidence proffered here necessarily outweighs the prejudice to the Defendants, or that the jury (even after a limiting instruction) would not make inappropriate inferences as to whether aspects of a hostile work environment, present in the past, occurred in the relevant period." ECF No. 138, at 12. It therefore ruled:

> I will permit testimony of the type contemplated, but only insofar as is necessary to establish 1) the who, what, when, and how of the prior complaint; 2) the Defendants' response to the complaint, if any; 3) whether the complaint was among those that Plaintiff informed her superiors about; and 4) the Defendants' view as to whether or not the complaint was founded. I will not permit description of these past complaints with unnecessary levels of detail, and I may preclude testimony regarding past complaints when such evidence clearly becomes cumulative in its effect. . . . I will not permit testimony that tends to probe the underlying basis of the past complaints. . . . I will caution the jury that all of these complaints are from a time period preceding the relevant period here, and . . . cannot in themselves constitute the basis of any liability against any of the Defendants.

*Id.* at 12-13.

The County's argument against admission of the testimony ultimately presented at trial by the four employees is that the evidence of rape and sexual harassment neither proves nor corroborates Ford's gender discrimination claims, which constitutes a separate type of discrimination. This argument is unavailing and undermined by our decision in *Hurley*. *See Hurley*, 174 F.3d at 111 (explaining that evidence of harassment is not only relevant to a hostile work environment claim, but also "intentional sex discrimination, *quid pro quo*, and retaliation claims" because "such discriminatory acts stem from similar motives" and "harassers may be expected to resent attempts to curb their male

9

prerogatives").

The District Court's decision to permit the testimony, particularly when coupled with the limitations it imposed, therefore does not constitute an abuse of discretion, and neither a reversal of judgment nor partial new trial is warranted on this basis. *See id.* at 110 ("[I]n Rule 403 terms, this evidence is highly probative, hence it is unlikely that any putative prejudice therefrom will be unfair or will outweigh its value.").

## B.    Liability

The County next contends that the District Court erred in denying judgment for Aviles and the County where denial of the request to attend a Microsoft class was not an adverse employment action and, even if it was, Aviles's supervisory liability for that act was not established.[4]  We exercise plenary review over a grant or denial of judgment as a

---

[4]   Ford argues that the County did not preserve this issue for review because it did not move for judgment as a matter of law at the close of her case and, as stated by the District Court, the renewed motion for judgment was only advanced by Aviles.  *See* JA 28 (stating that, although the "defendants' briefs seem to refer to JMOL in favor of both Aviles and the County," the County's motion is only for a partial new trial where the first point of the brief "is entitled 'Aviles is Entitled to Judgment as a Matter of Law,' and the arguments are directed to Aviles alone").  We are not persuaded.  The County may only be held liable for a § 1983 claim under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), if there is an underlying constitutional violation and finding of individual liability.  *Brown v. Commonwealth of Pa., Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003); *see also* JA 199 (instructing the jury that "[t]o find the County liable, [it] must first find that one of the individual defendants . . . is responsible for a violation of Plaintiff's rights").  While we have held that a municipality may be "independently liable for a substantive due process violation even in situations where none of its employees are liable," *Brown*, 318 F.3d at 482 (citing *Fagan v. City of Vineland*, 22 F.3d 1283, 1292 (3d Cir. 1994)), that decision was "carefully confined . . . to its facts:  a substantive due process claim resulting from a police pursuit," *Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 124 n.5 (3d Cir.

matter of law, applying the same standard as the lower court.  *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 88 (3d Cir. 2000).  We must therefore "assess 'whether, viewing the evidence in the light most favorable to sustaining the verdict, a reasonable jury could have found for the prevailing party.'"  *Graboff v. Colleran Firm*, 744 F.3d 128, 134 (3d Cir. 2014) (quoting *Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003)).

In ruling on the motion for judgment as a matter of law, the District Court noted that "[i]n claiming that supervisory liability should not attach, Aviles has much evidence to work with," namely Ford's testimony that "she had 'no facts' to support her allegation that Aviles knew about Edwards's discriminatory denial of the Microsoft training request."  JA 26.  Furthermore, Ford stated that there was "'no evidence' that Aviles told Edwards to deny her requests, that the two 'even spoke about these actions that Edwards was taking,' or that Aviles 'even knew about any of these actions that Edwards took before he took them.'"  JA 26-27.  Aviles and Edwards, moreover, told the jury that they did not speak about the request.

The District Court nonetheless highlighted the overall context of Ford's disputes

---

2003) (explaining in a Fourth Amendment excessive force case that "once the jury found that [the individual defendants] did not cause any constitutional harm, it no longer makes sense to ask whether the [municipality] caused them to do it").

Where the brief and proposed order asked the District Court to enter judgment as a matter of law for—and dismiss the claims against—both the County and Aviles, and the arguments concerning Aviles would also necessarily absolve the County of liability on that claim if meritorious, we decline to read the presentation of the brief as a waiver by the County.

with management, pervasiveness of sexist behavior at the DOC, and "friendly relations between Aviles and Edwards," which it stated "might give rise to an inference of knowledge by someone at Aviles's level of authority." JA 27. It therefore denied the motion on the basis that the evidence in the record did not support a finding of supervisory liability.

The District Court, meanwhile, did not address the argument that denial of the training request was not an adverse employment action, because of skepticism about applying the adverse employment action element required for a Title VII claim to a § 1983 claim. *See* JA 27 n.19 ("[Aviles] cites no case directly holding that § 1983 contains an 'adverse employment action' threshold. The adverse employment action element is rooted in the explicit Title VII prohibition of discrimination . . . . I am skeptical of applying it as a limit on the scope of § 1983, a much broader statute . . . ."). Instead, even though it was rejecting the supervisory liability argument, the District Court described the adverse employment action claim as an "alternative argument" that it need not reach because Aviles was not a Title VII defendant. *Id.*

The District Court was mistaken in its statement that the adverse employment action requirement did not apply here. The analysis of employment discrimination claims under § 1983 mirrors the Title VII analysis. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n. 1 (1993) ("[W]e shall assume that the [Title VII] *McDonnell Douglas* framework is fully applicable to . . . claims under 42 U.S.C. § 1983."); *McKenna v. Pac. Rail Serv.*, 32 F.3d 820, 825 n.3 (3d Cir. 1994) ("Although *McDonnell Douglas*

12

itself involved allegations of intentional . . . discrimination in violation of Title VII . . . , the shifting burden analysis with which the case name is now synonymous also has been applied in section 1983 cases, section 1981 cases and age discrimination cases." (citation omitted)); *Lewis v. Univ. of Pittsburgh*, 725 F.2d 910, 915 n.5 (3d Cir. 1983) ("[A]ctions brought under § 1981 and § 1983 . . . require the same elements of proof as a Title VII action."). And a prima facie case of discrimination under the Title VII burden shifting framework requires a showing of an adverse employment action, that is, "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 152-53 (3d Cir. 1999) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *see Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).

Even when "viewing the evidence in the light most favorable to sustaining the verdict," we cannot conclude that a reasonable jury could have found that the denial of the Microsoft training request amounted to an adverse employment action to support ruling in favor of Ford. *Graboff*, 744 F.3d at 134 (quoting *Johnson v. Campbell*, 332 F.3d 199, 204 (3d Cir. 2003)). Ford testified that the Microsoft class was of significance "[b]ecause it could help [her] improve putting in recruits in a ledger, [and] different things [she] was typing," such as "[m]emorandums of new recruits [and] . . . results of all of their . . . processes, whether they pass[ed], [or] failed." JA 839-40.

The denial of an opportunity to become marginally more efficient in the execution

13

of her duties does not constitute an adverse employment action, particularly where no evidence in the record suggests that any conditions or privileges of her employment were affected as a result. *Cf. Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (noting the importance of "separat[ing] significant from trivial harms" in determining whether an action is "materially adverse" for the purposes of a Title VII retaliation claim).

Ford's reference to other alleged actions by Edwards—namely, interfering with "use of vacation days, sick days and furlough days," assigning Ford to another unit, and failing to provide her with certain information—cannot support a different conclusion with respect to the action at issue. Ford Second-Step Br. 38. Because Ford therefore did not prove that Edwards committed a prohibited act of discrimination, a reasonable jury could not have found Aviles liable even if there were sufficient evidence that he had knowledge of the denial; the District Court erred when it concluded otherwise. Accordingly, a reasonable jury also could not have found the County liable under *Monell* in this case where there is no finding of individual liability. *See Brown*, 318 F.3d at 482.

Based on this conclusion, we must address how our determination affects liability against the County on the remaining claims—particularly the Title VII claim—before reaching the remainder of the parties' arguments on appeal. Ford's Title VII retaliation claim is premised solely on alleged retaliation for providing information "about a superior or superiors to the Hudson County Investigators." JA 205. In light of the jury's express finding that she was not discriminated against for providing such information,

14

which Ford does not challenge on appeal, she could not have established her Title VII retaliation claim against the County.[5]

That leaves the Title VII discrimination claim, which again may only be based on the alleged acts (d) and (g), *supra* at 4-5, relating to Edward's denial of Ford's request to attend the training seminar and "Coyne's failure to provide one on one firearms remediation training." JA 184. As explained above, the denial of the training request cannot support liability, and the jury found that Coyne did not commit any prohibited act of discrimination. Therefore, we conclude that our reversal on the judgment as a matter of law unravels any finding of liability against the County and no damages can be sustained.[6] *Cf. Pichford v. PEPI, Inc.*, 531 F.2d 92, 107 (3d Cir. 1975) (holding that no

_____

[5] The specific language of the verdict sheet is as follows:
**TITLE VII CLAIMS**
>   13. Did Plaintiff prove by a preponderance of the evidence that she was discriminated against by the **County** by being subjected to any Act of Retaliation after October 2005 (after [Aviles succeeded the previous director]) because of her gender?
>   Yes
>   . . .
>   14. Did Plaintiff prove by a preponderance of the evidence that she was discriminated against by the **County** and subjected to any Act of Retaliation after October 2005 . . . because she gave information about a superior(s)?
>   No

JA 164-65; *see* JA 18 (explaining that "Question 13 focused on the Title VII gender discrimination claim against the County" and "Question 14 focused on the Title VII retaliation claim against the County").

[6] The language of the NJCRA and § 1983 are comparable, and neither party argues that the state analogue requires a different analysis. *Cf. Perez v. Zagami, LLC*, 94 A.3d 869, 875 (N.J. 2014) (noting that the CRA was intended to be analogous to § 1983).

liability was proven on three counts and that the case must therefore be remanded to ascertain damages for the only count on which the finding of liability was affirmed).

In light of our determinations above, the parties' appeal and cross-appeal on damages and the award of attorneys' fees and costs are rendered moot. We will vacate the judgment of the District Court and the award of fees and costs. We will remand to the District Court for entry of a judgment consistent with this opinion.

## IV. Conclusion

For the foregoing reasons, we will affirm in part, reverse in part, and remand the case to the District Court for further proceedings consistent with this opinion.

---

Similarly, our Title VII discussion applies to Ford's NJLAD claim. *See Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 282 n.13 (3d Cir. 2001) ("Under the NJLAD and Title VII, the analysis is essentially the same."); *Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 498 (3d Cir. 1999) ("Analysis of a claim made pursuant to the NJLAD generally follows analysis of a Title VII claim."). Hence, these claims must fail as well.